**Bruce RING, Plaintiff–Appellant,**

v.

**FIRST INTERSTATE MORTGAGE, INC.; Federal National Mortgage Association, Defendants–Appellees.**

**No. 92–1019.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Jan. 28, 1993.

Mark T. McClosky, Wood River, IL, argued, for plaintiff-appellant.

Thomas Blumeyer Weaver, St. Louis, MO, argued (Steven P. Sanders and Andrew B. Mayfield, on the brief), for Federal Nat. Mortg. Ass'n.

Samuel C. Ebling, St. Louis, MO, argued (James P. Bick, Jr., on the brief), for First Interstate Mortg.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

The issue in this housing discrimination case is whether developer Bruce Ring's complaint states a claim under the Fair Housing Act, 42 U.S.C. §§ 3601–31. The district court granted defendant lenders' motions to dismiss because Ring failed to allege the elements of a prima facie case of discrimination. Because the prima facie case is an evidentiary rather than a pleading standard, we reverse.

I.

In March 1990, Ring commenced this action in Missouri state court, alleging that defendants First Interstate Mortgage, Inc. ("FIM"), and Federal National Mortgage Association ("Fannie Mae") had violated the National Housing Act, 12 U.S.C. §§ 1716–23, by refusing because of "ethnic and racial bias" to provide long-term mortgage financing for seven apartment buildings in predominantly minority St. Louis neighborhoods. Ring's Petition for Damages pleaded numerous background facts, no doubt because "Missouri is a fact-pleading state." *Wollen v. DePaul Health Center,* 828 S.W.2d 681, 683 (Mo.1992) (en banc).

After removing, defendants moved to dismiss on the ground that there is no private right of action under the National Housing Act. With the district court's permission, Ring then filed an amended Complaint for Damages that added claims under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d et seq., and the Fair Housing Act. Defendants again moved for dismissal.

On March 29, 1991, the district court dismissed Ring's claims under ECOA, Title VI, and the National Housing Act for failure to state a claim. The court denied defendants' motion to dismiss Ring's Fair Housing Act claim but granted Fannie Mae's alternative motion for a more definite statement and ordered Ring "to file a second amended complaint which clearly sets forth his alleged cause of action pursuant to the Fair Housing Act, 42 U.S.C. § 3605."

Ring then filed his Second Amended Complaint, FIM filed a motion to dismiss, and Fannie Mae filed a motion for summary judgment or to dismiss. On October 29, 1991, the district court granted defendants' motions to dismiss, concluding that Ring "has not alleged the elements necessary to prove a prima facie case" of racial discrimination under § 3605 because Ring (who is white) had failed to allege "that he is a member of a protected class.... that he qualified for the lending programs in question or, that Defendants continued to approve loans for applicants with qualifica-

tions similar to his own." This appeal followed.

## II.

On appeal, the parties have vigorously debated whether we are reviewing the grant of a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. The record on appeal contains voluminous factual materials in addition to the Second Amended Complaint, and Fannie Mae had moved in the alternative for summary judgment. However, the district court expressly stated it was granting defendants' motions to dismiss, and its analysis never strayed from the four corners of Ring's Second Amended Complaint. Therefore, we are reviewing a dismissal under Rule 12(b), and we will not consider whether summary judgment would have been appropriate. *See Martin v. Sargent,* 780 F.2d 1334, 1336–37 (8th Cir.1985); *see generally Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 18–19 (1st Cir.1992).

■ We review Rule 12(b)(6) dismissals *de novo. Wells v. Walker,* 852 F.2d 368, 369–70 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). Like the district court, we must view the complaint most favorably to Ring and may dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal is appropriate "as a practical matter ... only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974).[1]

1. In this case, the district court had specifically ordered Ring to file a second amended complaint properly stating a Fair Housing Act claim. Ring's Second Amended Complaint was untimely under that order, and it failed to cite § 3605, the statute the district court had ordered Ring to address. However, the district court chose to analyze the Second Amended Complaint on its merits, and therefore we must

## III.

■ The district court analyzed the Second Amended Complaint in terms of whether Ring has alleged the elements of a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Adapting the Title VII prima facie case to an alleged violation of § 3605, the district court concluded that Ring

> must prove (1) that he was a member of a protected class; (2) that he applied for and qualified for a loan from Defendants; (3) that the loan was rejected despite his qualifications; and (4) that Defendants continued to approve loans for applicants with qualifications similar to those of Plaintiff.

*See HUD v. Blackwell,* 908 F.2d 864, 870 (11th Cir.1990); *Selden Apts. v. HUD,* 785 F.2d 152, 159 (6th Cir.1986).

We have no doubt that the three-stage *McDonnell Douglas/Burdine* analysis applies to Fair Housing Act cases.[2] However, the prima facie case under this analysis is an evidentiary standard—it defines the quantum of *proof* plaintiff must present to create a rebuttable presumption of discrimination that shifts the burden to defendant to articulate some legitimate, nondiscriminatory reason for its conduct. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim. *See Moore v. Clarke,* 821 F.2d 518, 519 (8th Cir.1987) (the "whole spirit" of the Federal Rules "is to discourage the pleading of evidence"). "When a federal court reviews the sufficiency of a complaint ... [t]he issue is not whether a plaintiff will

apply our normal standard for review of a Rule 12(b)(6) dismissal.

2. HUD, the agency primarily responsible for enforcing the Fair Housing Act, has adopted this test to evaluate claims of discrimination under the Act, and we have approved that standard. *See United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir.1992).

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

There are two practical reasons why the prima facie case is an inappropriate pleading standard in a discrimination case. First, as we have noted, the *McDonnell Douglas/Burdine* analysis applies to cases in which a plaintiff has no direct evidence of discrimination; if direct evidence of an intent to discriminate does exist, plaintiff may be able to prevail without proving all of the elements of a prima facie case of disparate treatment. *See Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1262 n. 4 (8th Cir.1992); *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 726 (8th Cir. 1992).

Second, as the Supreme Court has emphasized, the prima facie case that a plaintiff must prove under the *McDonnell Douglas/Burdine* analysis varies depending upon the facts of the particular case—thus, there is no "inflexible formulation" that can be defined at the pleading stage of the lawsuit. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The prima facie case requirement "was 'never intended to be rigid, mechanized, or ritualistic.'" *United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (citation omitted). Thus, to measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate.

### IV.

■ Having rejected the prima facie case as a basis for Rule 12 analysis, we must turn to the statutory elements of a Fair Housing Act claim to determine whether Ring's Second Amended Complaint survives defendants' motions to dismiss. Congress has expressly provided a private right of action in this statute:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice ... to obtain appropriate relief with respect to such discriminatory housing practice....

42 U.S.C. § 3613(a)(1)(A). *Aggrieved person* is defined to include any person who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). A *discriminatory housing practice* is "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. § 3602(f). As the district court noted, on the facts of this case, the relevant substantive provision is § 3605, which provides:

**(a) In general**

It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

**(b) Definition**

As used in this section, the term "residential real estate-related transaction" means any of the following:

(1) The making or purchasing of loans ...

(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling....

We conclude that the allegations of Ring's Second Amended Complaint are sufficient to state a cause of action under these statutory provisions. Paragraphs 3 and 4 allege that FIM and Fannie Mae are "engaged in the business of making or purchasing" loans for real estate-related transactions, as defined in § 3605(b). Paragraph 9 alleges that defendants refused to make available financing for such a transaction. Paragraphs 9 and 10 allege that defendants' decision was based on the racial composition of the tenants of the properties or the neighborhoods in question and thereby constituted racial discrimination prohibited by the Act. In paragraph 11, Ring alleges that he has been "dam-

aged by the wrongful and illegal violation" of the Act. That makes him an "aggrieved person" under the statute, that is, one who *claims* injury from a "discriminatory housing practice." Thus, the Second Amended Complaint pleads, at least in general terms, the elements of a Fair Housing Act cause of action.

Fannie Mae argues that, to survive a Rule 12(b)(6) motion, Ring's Second Amended Complaint must allege facts "which, if true, would establish that Fannie Mae discriminated against plaintiff." However, whatever obligations a plaintiff may have in a fact-pleading State such as Missouri, Fed.R.Civ.P. 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Given the extensive prior proceedings in this case, and the hundreds of pages of factual materials contained in the record on appeal, defendants can hardly argue that they do not have "fair notice of the charges [so that] a meaningful response to the pleading may be filed." *Miles v. Ertl Co.*, 722 F.2d 434, 435 (8th Cir.1983).

As their briefs make clear, defendants' real objection to the Second Amended Complaint—indeed, to Ring's entire case—is that, in their view, he cannot prove what he has so generally alleged. Defendants argue at length that Ring never filed a formal application for a specific lending program, that he had already rehabilitated the properties so that the requested loan was not a "real estate-related transaction," and that the properties did not qualify under Fannie Mae loan programs. But these arguments go to whether Ring can prove his claim, not whether his Second Amended Complaint has adequately stated a claim under the Fair Housing Act. Such issues of proof are not properly before us, and we do not address them.

Ring's Second Amended Complaint has "give[n] the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v.*

*Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). We conclude that Ring has stated a basis for relief under § 3605. Therefore, the order of the district court dismissing this claim must be reversed.[3]

---

**3.** Ring's brief on appeal also challenges the district court's earlier order dismissing the other counts in his first amended complaint. However, as defendants note, Ring did not designate that earlier order in his notice of appeal, and therefore we do not consider these issues. *See* Fed.R.App.P. 3(c); *Brookens v. White*, 795 F.2d 178, 180 (D.C.Cir.1986); *see also* the last sentence in Rule 54(b).