108 F.3d 246
 36 Fed.R.Serv.3d 1244, 97 Cal. Daily Op. Serv. 1632,
97 Daily Journal D.A.R. 3106
 Catherine GILLIGAN; Maurice Gilligan; David Gilligan and
Wayne Gilligan, minors, by their guardian ad
litem, Catherine Gilligan, Plaintiffs-Appellants,
v.
JAMCO DEVELOPMENT CORPORATION, and Ruth Fischer,
individually and d/b/a Verdugo Gardens,
Defendants-Appellees.
 No. 95-56290.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 3, 1997.
Decided March 5, 1997.
 
 Elizabeth Brancart, Brancart & Brancart, Pescadero, California, for plaintiffs-appellants.
 Robert P. Beckham, Horgan, Rosen, Beckham & Coren, Woodland Hills, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California, A. Andrew Hauk, District Judge, Presiding. D.C. No. CV-94-04382-AAH.
 Before: D.W. NELSON, and TROTT, Circuit Judges, and BRYAN,* District Judge.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Catherine and Maurice Gilligan and their minor children, David and Wayne Gilligan (collectively, "the Gilligans"), appeal the dismissal of their action brought under the Fair Housing Act ("FHA" or "Title VIII"), 42 U.S.C. §§ 3604, 3613 (1994), and their pendent claim brought under the California Fair Employment and Housing Act, Cal. Gov't Code § 12955 (1995). The Gilligans allege that Jamco Development Corporation ("Jamco") and Ruth Fischer, the manager of Jamco's Verdugo Gardens apartment complex, refuse applications from all prospective tenants who receive benefits from the federal Aid to Families with Dependent Children program ("AFDC"). In their complaint, the Gilligans assert that such a restriction constitutes discrimination on the basis of familial status in violation of the FHA. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the district court's dismissal of the Gilligans' claims.
 
 FACTUAL BACKGROUND
 
 2
 Congress extended the FHA's protection to familial status in the Fair Housing Act Amendments of 1988, Pub.L. No. 100-430, 102 Stat. 1620. The FHA makes it unlawful to "refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... familial status." 42 U.S.C. § 3604(a). The FHA also proscribes statements with respect to the rental of a dwelling that indicate "any preference, limitation, or discrimination" based on familial status as well as representations "to any person because of ... familial status ... that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(c)-(d). "Familial status" refers to the presence of minor children in the household. 42 U.S.C. § 3602(k).
 
 
 3
 Catherine and Maurice Gilligan live with their two minor children, David and Wayne Gilligan. Since January 1993, they have received monthly AFDC benefits, which are available only to families with minor children residing in the home. See 42 U.S.C. § 606.
 
 
 4
 In January 1994, Catherine Gilligan contacted Ruth Fischer about renting an apartment at Verdugo Gardens in Burbank, California. According to the Gilligans' complaint, she informed Fischer that her family's source of income was AFDC, and Fischer replied that the Gilligans could not inspect or apply to rent an apartment because they were receiving AFDC benefits. The Gilligans maintain that Fischer never inquired about the amount of their monthly income or informed Catherine Gilligan of the monthly rent at Verdugo Gardens. They further allege that Fischer was aware of a vacant apartment unit in the building when she refused to discuss a rental with Catherine Gilligan.
 
 
 5
 On February 16, 1994, a fair housing tester posing as a prospective tenant contacted Fischer to inquire about the rental of an apartment unit for her family. The tester told Fischer that she received welfare payments, and Fischer responded that Verdugo Gardens was not a "welfare building." Fischer also stated that she had no apartments available to show until the following week.
 
 
 6
 Fifteen minutes later, a second fair housing tester contacted Fischer and inquired about the possibility of renting a unit for her family. In response to Fischer's questions, the second tester stated that she was working and did not receive welfare payments. Fischer promptly showed her an apartment that was being vacated.
 
 PROCEDURAL HISTORY
 
 7
 On June 29, 1994, the Gilligans filed a complaint in federal district court alleging that Jamco enforces a discriminatory occupancy restriction in the operation of its apartments based on prospective tenants' source of income. The Gilligans claim that since March 12, 1989, Jamco has imposed a "no AFDC" policy on applicants for units at Verdugo Gardens. Because only households with children qualify for AFDC benefits, the Gilligans contend that Jamco's refusal to consider applicants receiving AFDC benefits is a pretext for intentional discrimination against families with children. They also assert that the source of income restriction, even if it is neutral on its face, has the effect of discriminating against families.
 
 
 8
 On October 13, 1994, Jamco moved to dismiss the complaint for failure to state a claim. The Gilligans responded that they had alleged sufficient facts to state claims of both disparate treatment and disparate impact. Pointing to their failure to allege that they were financially qualified, the district court dismissed the complaint without prejudice and granted the Gilligans leave to amend.
 
 
 9
 On January 23, 1995, the Gilligans filed their first amended complaint, which the district court again dismissed with leave to amend. The district court insisted that the Gilligans could not sustain a fair housing claim without alleging that they were financially qualified to rent at Verdugo Gardens. The Gilligans responded that Jamco enforced a blanket proscription, without making any inquiry into individual applicants' financial qualifications.
 
 
 10
 On May 4, 1995, the Gilligans filed a second amended complaint, and Jamco moved to dismiss a third time. The Gilligans had argued consistently that financial qualification, though relevant at the proof stage, need not form part of the pleadings in a Title VIII case. The district court, however, dismissed the Gilligans' second amended complaint with prejudice on July 10, 1995, stating that the plaintiffs had failed to "cure the deficiencies" in their complaint because they had not alleged that they "have enough money to pay the rent."
 
 DISCUSSION
 
 11
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law subject to de novo review. Stone v. Travelers Corp., 58 F.3d 434, 436-37 (9th Cir.1995). The reviewing court considers only the contents of the complaint and construes all allegations of material fact in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir.1996); Allarcom Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995).
 
 
 12
 The Gilligans' complaint states that they are a family, that only families receive AFDC benefits, that Jamco has a policy prohibiting all AFDC recipients from applying for apartments, and that Jamco has relied on its "no AFDC" policy to "refuse to negotiate for the sale or rental of, or otherwise make unavailable" units at Verdugo Gardens. 42 U.S.C. § 3604(a). Thus, the Gilligans allege that they are members of a class protected under the FHA, identify a policy that affects only members of that class, and set forth facts that demonstrate the enforcement of that policy in the form of actions prohibited by the FHA. We hold that these allegations are sufficient to state a claim under the FHA.
 
 
 13
 The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir.1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' ") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 598 (1969)).
 
 
 14
 The Supreme Court has explained that "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. In particular, the Court has stated that the FHA must be given a "generous construction" to carry out a "policy that Congress considered to be of the highest priority." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209, 211-12, 93 S.Ct. 364, 366-68, 34 L.Ed.2d 415 (1972) (noting that private suits are "the primary method of obtaining compliance with the Act"). Moreover, the Court recently rejected the concept of a "heightened pleading standard" for civil rights cases and concluded that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).
 
 
 15
 By demanding of the Gilligans that they establish each element necessary to survive a motion for summary judgment, the district court asked far more of them than the federal rules require at the pleading stage. To plead their disparate treatment claim, the Gilligans need not make out a prima facie case of discrimination. Jamco's argument that the Gilligans must allege financial qualification in their pleadings relies on the McDonnell Douglas/Burdine structure for burdens of proof in Title VII cases, which has been imported into the Title VIII context. See Gamble v. City of Escondido, slip op. at 230, 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining [FHA] claims."); Pfaff v. United States Dep't of Hous. & Urban Dev., 88 F.3d 739, 745 n. 1 (9th Cir.1996) (stating that in fair housing cases, the court "may look for guidance to employment discrimination cases"). Adapted to a disparate treatment claim under the FHA, the McDonnell Douglas/Burdine proof standard requires a plaintiff to establish that she is a member of a protected class who applied for and was qualified to rent housing, that she was rejected, and that the housing opportunity remained available. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).
 
 
 16
 We hold that, while the McDonnell Douglas/Burdine standard orchestrates the burdens of proof in a Title VIII case, it does not dictate the required elements of a complaint. Our conclusion tracks the Eighth Circuit's analysis of the sufficiency of a fair housing complaint in Ring v. First Interstate Mortgage, Inc.:
 
 
 17
 [T]he three-stage McDonnell Douglas/Burdine analysis applies to Fair Housing Act cases. However, the prima facie case under this analysis is an evidentiary standard-it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination that shifts the burden to defendant to articulate some legitimate, nondiscriminatory reason for its conduct. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim.
 
 
 18
 984 F.2d 924, 926 (8th Cir.1993). We agree with the Ring court's statement that it is inappropriate, for "practical reasons," to "measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage." Id. at 927.[1]
 
 
 19
 We note two practical considerations that counsel against imposing the McDonnell Douglas/Burdine standard on the pleadings. First, dismissal of the Gilligans' claim on an undeveloped record was premature. The McDonnell Douglas/Burdine elements will be irrelevant if the Gilligans are able to advance direct evidence of discrimination. Id.; see also Kormoczy v. United States Dep't of Hous. & Urban Dev., 53 F.3d 821, 824 (7th Cir.1995) ("Where direct evidence is used to show that a housing decision was made in violation of the statute, the burden shifting analysis is inapposite."); Lowe v. City of Monrovia, 775 F.2d 998, 1006 (9th Cir.1985) ("[A] plaintiff can establish a prima facie case of disparate treatment without satisfying the McDonnell Douglas test.").
 
 
 20
 Moreover, without any responsive pleadings or record evidence, the Gilligans do not have the facts they need to allege each of the elements of a prima facie case. The information the district court demanded about the rent at Verdugo Gardens was within Jamco's control. Although Jamco's counsel acknowledged at oral argument that "plaintiffs may not know what the rent is," he insisted that "it is their burden" to allege financial qualification. These statements underscore the danger of dismissing a discrimination case on a minimal record. Notwithstanding the demands of Federal Rule of Civil Procedure 11, the standard Jamco advances would require plaintiffs to plead facts they may have no way of knowing.
 
 
 21
 Second, we recognize that the "McDonnell Douglas/Burdine analysis varies depending upon the facts of the particular case." Ring, 984 F.2d at 927. It would be impractical to identify an "inflexible formulation" for every discrimination claim. International Bhd. of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977); see also Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978) (stating that the prima facie case requirement was "never intended to be rigid, mechanized, or ritualistic"). For example, the FHA prohibits discrimination in the application process itself, and the Gilligans were denied the opportunity to inspect, or even inquire about, a rental at Verdugo Gardens. See 42 U.S.C. § 3604(a). The Gilligans' status as AFDC recipients should not render them unqualified to apply, even though a review of their application might reveal that they are unqualified to rent.
 
 
 22
 By adopting the Eight Circuit's rule from Ring, we extend a precedent from our Title VII jurisprudence to the fair housing context. We previously have stated that a Title VII plaintiff "need not make a prima facie showing to survive a motion to dismiss provided he otherwise sets forth a short and plain statement of his claim showing that he is entitled to relief." Ortez v. Washington County, 88 F.3d 804, 808 (9th Cir.1996). Here, we clarify that the vitality of a fair housing complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case. See Ring, 984 F.2d at 927. The FHA provides a private right of action for an "aggrieved person" subjected to "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The Gilligans are "aggrieved persons" under the statutory definition because they "claim to have been injured by a discriminatory housing practice." § 3602(i). The definition of "discriminatory housing practice" includes acts unlawful under 42 U.S.C. § 3604. Thus, the Gilligans' complaint is adequate to state a claim for relief under the FHA.
 
 
 23
 Finally, we note that the failure to plead financial qualification does not diminish the Gilligans' additional disparate impact claim. See Pfaff, 88 F.3d at 745 (stating that to set forth a prima facie case of disparate impact, a plaintiff need only identify outwardly neutral practices that have a disproportionate impact on members of a protected class). Even if the McDonnell Douglas/Burdine structure were applied to the pleadings, the Gilligans' finances are not relevant to the prima facie case of disparate impact; qualifications come into play with respect to the affirmative defense of business necessity after the burden shifts to the defendant.
 
 CONCLUSION
 
 24
 We conclude that the district court erred in requiring the Gilligans to allege each element of a prima facie case under the FHA in the pleadings. To insist on such a showing in the complaint would contradict both the spirit of the federal rules and the nature of civil rights cases. The Gilligans' complaint meets the standards set forth in the federal rules and applied to the fair housing context in Ring. 984 F.2d at 926-27. Accordingly, we reverse the district court's dismissal of the Gilligans' claims and remand for further proceedings.
 
 
 25
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 Our decision in Gamble v. City of Escondido should not be interpreted to the contrary. Although we stated that "on its face" a complaint did not present a prima facie case, we were reviewing a grant of summary judgment rather than assessing the sufficiency of the complaint. Moreover, our reasoning in Gamble rested on subsequent steps in the McDonnell Douglas/Burdine analysis. See 104 F.3d at 305