**GREEN ATLAS SHIPPING SA, TMM Co., Ltd., and the Britannia Steam Ship Insurance Association Limited, foreign corporations, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**United States of America, Counterclaimant,**

v.

**Green Atlas Shipping S.A., and TMM CO., Ltd., in personam, Counterclaim Defendants.**

**United States of America, Third–Party Plaintiff,**

v.

**Taiheiyo Kaiun Co., Ltd., Shipowners Insurance and Guarantee Co., Ltd., and Benjamin Mortel Morgado, in personam, Third–Party Defendants.**

No. CIV.01–156–KI.

United States District Court, D. Oregon.

Sept. 11, 2003.

Bernice Conn, Michael A. Geibelson, Robins Kaplan Miller & Ciresi, LLP, Los Angeles, CA, Dean D. DeChaine, Miller Nash, LLP, Michael E. Haglund, Haglund Kirtley Kelley Horngren & Jones LLP, Janet Lee Hoffman, Law Offices of Janet Lee Hoffman, Portland, OR, Richard L. Jarashow, McGuireWoods, LLP, New York City, David Martinez, Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, CA, John C. Mercer, Wood Tatum Sanders & Murphy, Portland, OR, Eugene J. O'Connor, Fowler, Rodriguez & Chalos, Oyster Bay, NY, Robert I. Sanders, Wood Tatum Sanders & Murphy, Portland, OR, Roman M. Silberfeld, Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, CA, Todd A. Zilbert, Wood Tatum Sanders & Murphy, Portland, OR, for Plaintiffs.

Philip A. Berns, Lisa M. Houlihan, West Coast Office Torts Branch, Civil Division, San Francisco, CA, Michael W. Mosman, U.S. Attorney's Office, Stuart E. Schiffer, Acting U.S. Attorney General United States Attorney General, United States Attorney, Herbert C. Sundby, United States Attorney's Office, Portland, OR, Robert Michael Underhill, U.S. Department of Justice Torts Branch, Civil Division, San Francisco, CA, William W. Youngman, United States Attorney's Office, Portland, OR, for Defendant.

## OPINION

KING, District Judge.

This action arises out of the grounding of the M/V NEW CARISSA. Before the court are several motions to dismiss and motions for summary judgment. For the following reasons, Third–Party Taiheiyo Kaiun Co. Ltd's Motion to Dismiss/Motion to Strike/Motion for More Definite Statement (# 117), Plaintiffs' Motion for Summary Judgment Re: Causes of Action Nine to Twelve of the Amended Counterclaims and Eleven to Fifteen of the Third–Party Complaint (# 134), and Third–Party Benjamin Morgado's Motion for Partial Summary Judgment on the United States' OPA Claims (First and Second Causes of Action)(# 141) are granted, the United States' Motion for Partial Summary Judgment (# 130) and Plaintiffs' Motion for Summary Adjudication Re: Choice of Law (# 97) are deferred, and Captain Morgado's Motion to Disregard/Exclude (# 167) is moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 1999, the M/V NEW CARISSA ran aground the near Coos Bay, Oregon. The vessel broke into pieces and its fuel oil was discharged into the environment in harmful quantities. The NEW CARISSA was owned by Green Atlas Shipping S.A. ("Green Atlas"), managed and operated by TMM Co., Ltd. ("TMM"), and insured by Britannia Steamship Insurance Association, Ltd. ("Britannia"), who are the plaintiffs in this case. They sue the United States for negligence, which plaintiffs allege caused the ship to run aground and break into pieces. Plaintiffs allege the United States was negligent in, among other ways, designating the area in which the NEW CARISSA was anchored as a suitable anchorage during the winter months on both the applicable nautical chart and Coast Pilot publication. Plaintiffs seek $96 million.

The United States asserts counterclaims against plaintiffs for pollution removal costs and other damages allegedly flowing from the spill. The United States asserts counterclaims under the Oil Pollution Act, the general maritime law of negligence, and the Rivers and Harbors Act. It also asserts common law claims for unjust enrichment, public nuisance, trespass, and negligence per se. The United States amended its Counterclaims in December 2002, to allege a violation of the Federal Debt Priority Statute, 31 U.S.C. § 3713, fraudulent transfers, including violation of the fraudulent transfer provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301 *et seq.*, and imposition of a constructive trust.

The United States has also filed a Third–Party Complaint against Captain Benjamin Morgado, the master of the NEW CARISSA, Shipowners Insurance and Guarantee Co., Ltd. ("Shopowners"), the company that provided a certificate of financial responsibility for the vessel, and Taiheiyo Kaiun Co. ("Taiheiyo"), the parent company of Green Atlas and TMM. These claims are very similar to the counterclaims asserted by the United States against plaintiffs. The government also brings an additional claim against Taiheiyo

entitled "Pierced Corporate Veil," alleging alter ego liability through its wholly owned subsidiaries, Green Atlas and TMM.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) will only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 248 (9th Cir.1997). Normally, the review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Id.* The court, however, may consider whether conclusory allegations follow from the description of facts alleged. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992). The court may also review a document extrinsic to the complaint if the authenticity of the document is not contested and the complaint necessarily relies upon it. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.) (permissible to consider employer's group insurance application in action alleging improper denial of benefits), *cert. denied*, 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423 (1998). Moreover, the court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir.1998).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.), *cert. denied*, 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

I. *Third–Party Taiheiyo Kaiun Co. Ltd's Motion to Dismiss/Motion to Strike/Motion for More Definite Statement (# 117)*

Third–Party defendant Taiheiyo moves to dismiss or strike the twelfth cause of action ("Constructive Trust") and the fifteenth cause of action ("Pierced Corporate Veil") and to dismiss, strike, or order a more definite statement concerning the fourteenth cause of action ("Fraudulent Transfers") of the Third–Party Complaint.

With respect to the fifteenth cause of action, Taiheiyo argues that "pierced corporate veil" is not a separate cause of action, as there is no liability for acts that merely support piercing of a corporate veil in the absence of some viable underlying claim. *See e.g., Local 159 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir.1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."). In addition to arguing that the fifteenth cause of action is not a cognizable separate claim, Taiheiyo argues that it is redundant in light of the Third–Party Complaint's allegations throughout that Taiheiyo acted through its alter egos Green Atlas and TMM.

The government responds by arguing that Taiheiyo's motion puts form over substance. The government argues that whether the pierced corporate veil allegations are considered as a separate ("redundant," as alleged by Taiheiyo) cause of action or as part of the underlying causes of action, they are still pleaded with the

required particularity and should not be dismissed for failure to state a claim.

I agree with Taiheiyo that pierced corporate veil is not a separate cause of action and I will dismiss the fifteenth claim but allow the United States to make its alter ego allegations in the context of the remaining underlying substantive claims for liability in this action. The United States agrees to dismiss the other two claims that are the subject of this motion (the twelfth and fourteenth claims). Accordingly, Taiheiyo's Motion to Dismiss/Motion to Strike/Motion for More Definite Statement (# 117) is granted and the twelfth, fourteenth and fifteenth causes of action of the Third–Party Complaint are dismissed with prejudice.

## II. *The United States' Motion for Partial Summary Judgment (# 130)*

The government moves for partial summary judgment concerning any allegations that the United States Coast Guard negligently failed to undertake a rescue operation to prevent the New Carissa from going aground. Plaintiffs assert in response that they are unable to evaluate the propriety of this motion without additional discovery. The parties stipulate to a continuance of the motion for partial summary judgment to allow plaintiffs to take certain depositions and evaluate other discovery. Based on the parties' stipulation, the United States' Motion for Partial Summary Judgment (# 130) is stayed pending completion of the limited discovery discussed in the parties' briefing.

## III. *Plaintiffs' Motion for Summary Judgment Re: Causes of Action Nine to Twelve of the Amended Counterclaims and Eleven to Fifteen of the Third–Party Complaint (# 134)*

Plaintiffs and third-party defendant Taiheiyo move for partial summary judgment against the ninth ("Priority of Government Claims, 31 U.S.C. § 3713"), tenth ("Constructive Trust"), eleventh ("Fraudulent Transfer Provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3301, *et seq*") and twelfth ("Fraudulent Transfers") causes of action in the United States' Amended Counterclaims, and the eleventh ("Priority of Government Claims, 31 U.S.C. § 3713"), twelfth ("Constructive Trust"), thirteenth ("Fraudulent Transfer Provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3313 et seq"), fourteenth ("Fraudulent Transfers") and fifteenth ("Pierced Corporate Veil") causes of action in the Third–Party Complaint. In response, the government agrees to dismiss the ninth through twelfth causes of action in the Amended Counterclaims and the eleventh through fourteenth causes of action in the Third–Party Complaint. This leaves only the fifteenth cause of action of the Third–Party Complaint ("Pierced Corporate Veil"). As discussed above, I find that pierced corporate veil is not a separate cause of action. Plaintiffs' Motion for Summary Judgment Re: Causes of Action Nine to Twelve of the Amended Counterclaims and Eleven to Fifteen of the Third–Party Complaint (# 134) is granted in its entirety and the United States' ninth through twelfth counterclaims and eleventh through fifteenth third-party claims are dismissed with prejudice.

## IV. *Third Party Benjamin Morgado's Motion for Partial Summary Judgment on the United States' OPA Claims (First and Second Causes of Action) (# 141)*

Before addressing the merits of Captain Morgado's summary judgment motion, I will address Captain Morgado's Motion to Disregard/Exclude certain evidence offered by the United States (# 167) in response to the motion for summary judgment. Captain Morgado moves to exclude

the documents submitted and the language in the United States' brief related to Morgado's role in the events that occurred right before the grounding of the vessel, the weather and the weather forecasting, and the anchor and its dragging. Captain Morgado, as well as the other vessel interests, have also filed objections to the government's statement of purported undisputed facts relevant to this motion. For purposes of ruling on Captain Morgado's summary judgment motion, I do not need to rely on the documents submitted by the government or the extensive factual background the government presents. Accordingly, I deem Captain Morgado's Motion to Disregard/Exclude (# 167) moot.

Captain Morgado moves for summary judgment against the first and second causes of action in the government's Third–Party Complaint. These causes of action assert claims against him under the Oil Pollution Act ("OPA"). Captain Morgado argues that he is not a "responsible party" under the OPA because he was not an "operator" of the NEW CARISSA, as alleged by the government.

The OPA does not specifically define whether a vessel captain is a responsible party for purposes of imposing liability. Instead, it provides that a "responsible party" means "[i]n the case of a vessel, any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32). "Owner or operator" is defined as "in the case of a vessel, any person owning, operating, or chartering by demise, the vessel...." 33 U.S.C. § 2701(26).

In enacting the OPA, Congress sought to "adequately compensate victims of spills, provide quick, efficient cleanup, minimize damage to fisheries, wildlife and other natural resources and internalize those costs within the oil industry and its transportation sector." S.Rep. No. 101–94, at 2 (1990), *reprinted in* U.S.C.A.N.N. 722, 723.

To accomplish these goals, the OPA establishes a strict liability scheme:

Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

33 U.S.C. § 2702(a).

Captain Morgado argues that categorizing vessel employee-captains as responsible parties under the OPA is contrary to the statutory scheme that Congress created to promptly pay damages and removal costs, regardless of fault, whenever a spill occurs. Captain Morgado makes several arguments based on the OPA's statutory and regulatory scheme, the strongest of which I believe are his arguments related to the financial requirements of responsible parties under the statute.

The OPA requires responsible parties to establish and maintain financial responsibility sufficient to meet the maximum amount of liability that could be imposed under the statute. 33 U.S.C. § 2716(a). With respect to the NEW CARISSA, Captain Morgado submits that this would be approximately $22 million dollars. Captain Morgado argues that Congress could not have intended captains to be responsible parties because Congress could not have contemplated that Captain Morgado himself would have financial assurance in the amount of $22 million. Because the wealth of the vast majority (if not all) of employee-captains is nowhere near the level required to pay damages and cleanup costs associated with an oil spill, Captain Morgado argues that holding vessel cap-

tains strictly liable does little to further the OPA's goal of ensuring prompt cleanup and payment.

The statute further requires that when a responsible party "owns or operates more than one vessel, evidence of financial responsibility need be established only to meet the amount of maximum liability applicable to the vessel having the greatest maximum liability." 33 U.S.C. § 2716(a). Captain Morgado argues that Congress' decision to not require duplicate security in a fleet situation shows that it makes no sense to require security from individual captain-employees.

Captain Morgado also relies on the regulations promulgated by the Secretary of Transportation with respect to the OPA's financial responsibility requirements. For example, the regulations further define operator as "a person who is an owner, a demise charterer, or other contractor, who conducts the operation of, or who is responsible for the operation of, a vessel. A builder, repairer, scrapper, lessor, or seller who is responsible, or who agrees by contract to become responsible, for a vessel is an operator." 33 C.F.R. § 138.20(b). Captain Morgado argues that he does not fall within any of these categories and that this definition shows that operators are those entities bottom-line responsible for the vessel. Captain Morgado also relies on the regulations governing the process for filing and obtaining a certificate of financial responsibility and regulations that apply after issuance of the certificate. In this case, under the regulations, TMM filed and obtained the certificate as NEW CARISSA's operator. Captain Morgado contends that he had nothing to do with the certification application, and like most employee-captains, had nothing to do with the vessel's insurance.

The government argues in response that the regulations relied on by Captain Morgado are irrelevant, as he confuses regulatory financial responsibility issues with statutory liability issues. I agree with the government that the definition of operator found in 33 C.F.R. § 138.20(b) is limited by its terms to apply only to Part 138 of the regulations. The government also makes a valid point that the regulations cited by Morgado with respect to financial responsibility should not be read to "trump" the statutory language regarding liability. However, the government's response regarding the limited value of the regulations to this analysis does not address the fact that the statute itself first establishes the requirement that responsible parties—the same term used to identify who is liable—have adequate evidence of financial responsibility. Additionally, 33 C.F.R. Part 138 was promulgated under 33 U.S.C. § 2716(a), which gives the Secretary authority to establish procedures under which responsible parties must establish evidence of their ability to meet their maximum liability under the statute. I am persuaded by Captain Morgado's arguments because the financial responsibility requirements in the statute indicate that Congress had a narrow view of which entities would be responsible parties in the context of a vessel, and because, likewise, the agency charged with implementing the statute did not appear to have interpreted Congress' intent as casting the OPA's liability net over vessel captains.

Captain Morgado argues that the historical meaning of operator in the maritime context is the entity that controls the vessel and its captain and crew, not the captain himself. Captain Morgado cites to a number of cases that show that many different entities may qualify as an operator for purposes of liability in the general maritime context. For example, in *Guzman v. Pichirilo*, 369 U.S. 698, 701–03, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962), a suit brought by an injured longshoreman, the Supreme Court found liability in the owner

because it had complete control over the vessel. In cases involving charterers, a charterer may be considered an operator for purposes of determining liability when it hires or controls the captain and the crew (a "demise" or "bareboat" charter). *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § § 11–3 to 11–5. *See also Dant & Russell Inc. v. Dillingham Tug & Barge Corp.,* 895 F.2d 507 (9th Cir.1990) (demise charter is effective means of transferring liability from owner). Captain Morgado argues that what is *absent* in the general maritime law are cases finding that a vessel captain, who is not the owner or charterer of the vessel, is considered an operator.

The government does not directly address the arguments raised by Captain Morgado with respect to the general maritime meaning of operator. Instead the government mostly relies on the word "person" in the statute and the "plain meaning" canon of statutory construction. As noted above, the OPA defines "responsible parties" as "[i]n the case of a vessel, any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32). The government relies on Congress' use of "any person," which is defined in the OPA as an "individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 2701(27). The government argues that Captain Morgado is a person within the meaning of the statute, and that as the Captain of the vessel, he quite literally operated it.

The government also makes comparisons to cases in which individual liability has been allowed under other environmental statutes such as the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). Both CERCLA and the OPA have strict liability schemes and the statutes share nearly identical definitions of "owner" and "operator." *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), is the primary CERCLA case regarding "operator" liability. In *Bestfoods,* the Supreme Court held that a parent corporation that actively participated in and exercised control over the operations of its subsidiary's facility may be held directly liable under CERCLA as an operator of the facility. *Id.* at 65–72, 118 S.Ct. 1876. The government also relies on *Riverside Market Dev. Corp. v. International Bld. Prods., Inc.,* 931 F.2d 327, 330 (5th Cir. 1991), and other CERCLA cases in which courts have ruled that *individuals* can be held liable under the statute. The government asks this court to find under the OPA, as other courts have found under CERCLA, that individuals can be liable, and that the question of individual liability then turns on the amount of control exercised under the standards articulated by the Supreme Court in *Bestfoods.*

There appears to be one reported case that directly addresses, albeit in dicta, the issue of operator liability under the OPA, *Harris v. Oil Reclaiming Co.,* 94 F.Supp.2d 1210 (D.Kan.2000). Although *Harris* did not involve a vessel captain, the government relies on the case because the court discusses the potential for personal liability under the OPA. The court makes these comments by citing to *Bestfoods* and other CERCLA cases about operator liability. Ultimately for other reasons, the *Harris* court decided the OPA did not apply to the plaintiffs' claims.

■ Although the dicta in *Harris* suggests that at least one court might have been willing to look to CERCLA cases for guidance on the meaning of operator under the OPA, I am not persuaded that I should take that approach with respect to the narrow issue before me of a vessel captain's liability. I recognize that both stat-

utes have nearly identical broad definitions of operator and similar strict liability schemes, but I believe there are significant differences between the two statutes that lead me to conclude that the simple application of the CERCLA operator jurisprudence is not appropriate in this context. As noted above, I am persuaded by Captain Morgado's arguments about the OPA's financial responsibility requirements. The statute's financial requirements for responsible parties suggests that Congress did not intend vessel captains to be within the liability net. In contrast, the government has shown no similar language in CERCLA that makes any ties between the statutory responsible parties and their ability to provide proof of coverage for the maximum extent of their liability. Indeed, I am aware of no requirement under CERCLA to apply for or obtain but for the threat of sanctions any type of permit or certification, as required for vessels under the OPA. Also, given the absence of authority to support the government's position, I am unwilling to find that in the context of vessels Congress meant to deviate far from the general maritime understanding of operators as those entities that are ultimately responsible for the vessel's overall operation, including the direction of the captain and crew, but not the captain himself. I find that Captain Morgado was not an operator of the NEW CARISSA within the meaning of the OPA and accordingly I grant his Motion for Partial Summary Judgment on the United States' OPA Claims (First and Second Causes of Action) (# 141).

## V. *Other Issues*

Counsel for the government stated at oral argument that the United States was prepared to dismiss several other claims and counterclaims. The government has agreed to dismiss the third, fourth, fifth, sixth, seventh and eighth causes of action in its Amended Counterclaims (in addition to the ninth through twelfth counterclaims which were the subject of the plaintiffs' motion, as discussed above). Based on this concession, I dismiss with prejudice claims three through eight of the United States' Amended Counterclaims. The only two counterclaims that remain are the first and second causes of action against Green Atlas and TMM under the OPA.

The government has also agreed to dismiss the third, fourth, fifth, sixth, seventh and eighth causes of action in the Third–Party Complaint (in addition to the eleventh, twelfth, thirteenth, and fourteenth causes of action, which are the subject of the plaintiffs' motion, as discussed above). Based on this concession, I dismiss with prejudice claims three through eight of the Third–Party Complaint. Because I have already dismissed the fifteenth cause of action ("Pierced Corporate Veil") the only claims that remain in the Third–Party Complaint are the first and second causes of action against Taiheiyo and Shipowners under the OPA, and ninth and tenth causes of action against Taiheiyo and Captain Morgado for contribution

Third-party defendant Taiheiyo remains in this action under the first, second, ninth and tenth causes of action of the Third–Party Complaint. At oral argument, counsel for the United States proposed bifurcating for separate trial the issues related to alleged alter ego liability of Taiheiyo. The parties subsequently sent written communications to the court setting forth their respective positions on bifurcation and they appear to be in agreement that bifurcation of the alter ego liability issues is appropriate. Based on this stipulation and for purposes of efficiency during the upcoming trial, the issue of Taiheiyo's alter ego liability will be bifurcated from the underlying determination of liability. Taiheiyo has not filed an Answer to the Third–Party Complaint. Taiheiyo is not

required to respond with respect to the United States' alter ego allegations until after completion of the upcoming trial and resolution of the underlying liability for the remaining claims in the action. However, Taiheiyo shall respond within fourteen days of the date of this Opinion to the Third–Party Complaint's remaining claims to the extent that those claims do not depend on alter ego liability.

Finally, I note that plaintiffs have asked the court to rule that the law of Panama governs the United States' alter ego claims as they relate to Green Atlas, and that the law of Japan governs the United States' alter ego claims as they relate to TMM. Because I have decided to bifurcate the alter ego issues from the upcoming trial, I defer ruling on plaintiffs' motion regarding choice of law (# 97).

### CONCLUSION

For the foregoing reasons, Third–Party Taiheiyo Kaiun Co. Ltd's Motion to Dismiss/Motion to Strike/Motion for More Definite Statement (# 117), Plaintiffs' Motion for Summary Judgment Re: Causes of Action Nine to Twelve of the Amended Counterclaims and Eleven to Fifteen of the Third–Party Complaint (# 134), and Third–Party Benjamin Morgado's Motion for Partial Summary Judgment on the United States' OPA Claims (First and Second Causes of Action)(# 141) are granted, the United States' Motion for Partial Summary Judgment (# 130) and Plaintiffs' Motion for Summary Adjudication Re: Choice of Law (# 97) are deferred, and Captain Morgado's Motion to Disregard/Exclude (# 167) is moot.