**Ruth ISAAC and ACORN, Plaintiffs,**

v.

**NORWEST MORTGAGE, Defendant.**

No. CIV.A. 3:00–CV–0989–.

United States District Court,
N.D. Texas,
Dallas Division.

March 30, 2001.

---

Michael Maury Daniel, Laura B. Bishara, Scott A. Marks, Law Office of Michael M. Daniel, Dallas, TX, for Plaintiffs.

Carlyle H. Chapman, Jr., Robert T. Mowrey, Arthur E. Anthony, Locke, Liddell & Sapp, Dallas, TX, for Defendant.

LINDSAY, District Judge.

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss, filed July 28, 2000. Upon careful consideration of the motion, response, reply, the pleadings on file in this case, and the applicable law, the court denies the motion for the reasons stated herein.

### I. Factual and Procedural Background[1]

According to Plaintiffs' First Amended Complaint ("Complaint"), Plaintiff Ruth Isaac ("Isaac") is a homeowner in a predominantly African–American area of Dallas, Texas and a member of Plaintiff ACORN. ACORN is a non-profit association whose members are Dallas residents of low and moderate income who live in neighborhoods primarily occupied by racial and ethnic minorities. ACORN seeks the improvement of conditions in its members' neighborhoods, including the preservation of neighborhood viability and the elimination and prevention of blighting conditions.

---

1. On a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiffs' factual allegations as true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000).

Defendant Norwest Mortgage ("Norwest")[2] is in the business of making or purchasing mortgage loans for residential real estate. Plaintiffs allege that Norwest has violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* in three ways. First, they allege that Norwest discourages potential purchasers from inspecting or purchasing dwellings in the predominantly minority areas of Dallas, through the use of overt racial classifications on an Internet site and by emphasizing negative features and de-emphasizing favorable features of these neighborhoods (the "advertising claim"). Second, they allege that Norwest uses an Internet site to steer potential purchasers to areas in which the person's race predominates, thus perpetuating racial segregation (the "steering claim").[3] Third, they allege that Norwest discriminates, in making loans on residential real estate, on the basis of the race or color of the residents in the areas in question (the "discriminatory lending claim").

Plaintiffs allege that Isaac and other members of ACORN are injured by Norwest's practices in two distinct ways—by subjecting them to racial segregation through the use of overt racial classifications, and by artificially reducing the demand for homes in their neighborhoods thus lowering the value of their real estate. Isaac and ACORN filed this action on June 21, 2000, seeking injunctive relief and attorney's fees and costs. Norwest responded by filing this motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the Complaint does not adequately allege facts sufficient to establish standing.

## II. *Standard of Review*

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). In ruling on such a motion, the court cannot look beyond the face of the pleadings. *Id.; Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999), *cert. denied,* 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey,* 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of La- Place,* 954 F.2d 278, 281 (5th Cir.1992).

---

**2.** Norwest Mortgage merged with Wells Fargo & Company and, as of April 17, 2000, is doing business as Wells Fargo Home Mortgage.

**3.** Although the second cause of action obviously has substantial overlap with the first,

they are distinct. The first involves discouraging people from purchasing in minority areas. The second constitutes encouraging people to purchase, but only in areas where that person's race predominates.

### III. *Analysis*

Norwest moves to dismiss Plaintiffs' claims in their entirety pursuant to Fed. R.Civ.P. 12(b)(6), contending that the Complaint fails to state a claim upon which relief can be granted. Specifically, Norwest argues that both Isaac and ACORN lack the requisite standing to pursue these claims, and that the discriminatory lending claim in particular requires the allegation of facts that the Complaint does not include.

### A. *Isaac*

■ The Supreme Court has held that standing under the Fair Housing Act extends to the full limits of Article III of the Constitution, and is not restricted by any of the doctrines of prudential standing. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). "Thus the sole requirement for standing to sue under [the Fair Housing Act] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Id.* (citation and internal quotation marks omitted). In addition to the requirements of injury and causation, a plaintiff must also show that "the injury will likely be redressed if he prevails in his lawsuit." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 556 (5th ·Cir.1996).

■ The Complaint clearly alleges a "distinct and palpable injury." Although the effects of which Isaac and ACORN complain are indirect, the distinction "between 'third-party' and 'first-party' standing" is "of little significance in deciding whether a plaintiff has standing to sue under ... the Fair Housing Act." *Havens Realty,* 455 U.S. at 375–76, 102 S.Ct. 1114.[4] Racial segregation and economic injury (reduced value of their property) constitute palpable injuries sufficient for standing. *Id.* at 376, 102 S.Ct. 1114.

■ Norwest points to the Supreme Court's statement that "[o]ur cases have upheld standing based on the effects of discrimination only within a 'relatively compact neighborhood.'" *Id.* at 377, 102 S.Ct. 1114 (citation omitted). That is, "[i]t is indeed implausible to argue that ... alleged acts of discrimination [in one area] could have palpable effects throughout the entire [Dallas] metropolitan area." *Id.* In essence, this goes to the requirement of causation. This does not mean that discrimination *cannot* affect an entire metropolitan area, only that the site of alleged discriminatory acts[5] must be within reasonable proximity to the site of the injury. Widespread discrimination can have palpable effects that are equally widespread.

■ Norwest argues that the Complaint does not plead a specific compact neighborhood against which the alleged discriminatory acts were directed and within which the injuries to Isaac and ACORN were suffered. The operative language in the Complaint for the first two causes of action is "the predominantly minority ar-

---

4. Norwest points out that Plaintiffs do not allege that they viewed the advertising in question, or were themselves "steered" in seeking to purchase a home. That would constitute "first-party" standing but, as *Havens Realty* holds, that is not necessary. If others viewed the advertising or were "steered," that is sufficient for standing as long as Plaintiffs were injured as a result of such alleged violations of the Fair Housing Act.

5. In this context, the site of the alleged discriminatory acts refers to the residential areas against which the alleged discriminatory acts were directed, not the actual location where, for example, Norwest created and issued the advertising.

eas of Dallas," while the third cause of action refers to "predominantly African–American areas." The predominantly minority areas or predominantly African–American areas of Dallas encompass a very large geographic area. In *Havens Realty,* the Supreme Court indicated that the Richmond metropolitan area, smaller than the area at issue here, would not constitute a specific compact neighborhood. *Id.* Accordingly, discriminatory acts aimed at one neighborhood within the Richmond metropolitan area would not create standing for residents of another neighborhood unless the two neighborhoods were in reasonable proximity. Norwest argues that the facts pleaded in the Complaint are insufficient to establish the reasonable proximity of the discriminatory acts to the residences of Isaac and other members of ACORN.

*Havens Realty* involved "the city of Richmond [which] contained a population of nearly 220,000 persons, dispersed over 37 square miles" and "Henrico County [which] occupied more than 232 square miles, in which roughly 170,000 people made their homes." *Id.; cf. Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 113–14, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (holding that "a 12–by 13–block residential neighborhood" constituted a "relatively compact neighborhood" and sufficed for standing). The Supreme Court concluded that this entire area would not be sufficiently compact for standing, but also decided that dismissal at that stage was inappropriate:

> [I]n the absence of further factual development, we cannot say as a matter of law that no injury could be proved. Respondents have not identified the particular neighborhoods in which they lived, nor established the proximity of their homes to the site of petitioners' alleged steering practices. Further pleading and proof might establish that they lived in areas where petitioners' practices had an appreciable effect. Under the liberal federal pleading standards, we therefore agree with the Court of Appeals that dismissal on the pleadings is inappropriate at this stage of the litigation. At the same time, we note that the extreme generality of the complaint makes it impossible to say that respondents have made factual averments sufficient if true to demonstrate injury in fact. Accordingly, on remand, the District Court should afford the plaintiffs an opportunity to make more definite the allegations of the complaint. If after that opportunity the pleadings fail to make averments that meet the standing requirements established by the decisions of this Court, the claims should be dismissed.

*Havens Realty,* 455 U.S. at 377–78, 102 S.Ct. 1114 (citation omitted). *Havens Realty* is directly on point, and Norwest's arguments for a different result here are insufficient.

Norwest relies on two subsequent cases from different jurisdictions which are clearly distinguishable. In *Anderson v. City of Alpharetta,* 770 F.2d 1575 (11th Cir.1985), dismissal came only the month before trial. *Id.* at 1576 (incorporating the district court's order). The lower court "specifically reserved the issue of the NAACP's standing until discovery was completed," the NAACP was afforded an opportunity to amend the allegations in its complaint, and additional briefs were submitted on the standing issue. *Id.* at 1579–80. Even at that late date, the NAACP was unable or unwilling to narrow the alleged scope of the area injured to the required compact neighborhood, alleging "that a discrete act of annexation by a town of 18 square miles injured an area the size of half a county, or approximately 265 square miles." *Id.* at 1581. In *South*

*Suburban Housing Center v. Santefort Real Estate, Inc.,* 658 F.Supp. 1450 (N.D.Ill.1987), *aff'd in part, rev'd in part,* 857 F.2d 1476 (7th Cir.1988) (decision without reported opinion), the court dismissed the suit on motion for summary judgment, when the geographic scope of the plaintiffs' complaint had been reduced no smaller than "a 220 square mile area with a population of 700,000." *Id.* at 1453–54. Even if *Anderson* or *South Suburban* were binding precedent in this circuit, they would have little persuasive force as this case has not yet proceeded to such an advanced stage of factual development.[6]

The court concludes that *Havens Realty* controls the result in this case. Although Isaac has not "identified the particular neighborhoods in which [she] live[s], nor established the proximity of [her] home[ ] to the site of petitioners' alleged steering practices," at this stage the court "cannot say as a matter of law that no injury could be proved." Dismissal is therefore inappropriate.

### B. *ACORN*

 An association such as ACORN may have standing either in its own right, as a result of injury to itself, or "as the representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). ACORN has asserted representative standing, that is, alleging "that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case

had the members themselves brought suit." *Id.* "An organization . . . has standing to bring an action on behalf of its members where: (1) the organization's members would have standing to sue individually; (2) the organization is seeking to protect interests that are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the organization's members to participate in the lawsuit." *Sierra Club,* 73 F.3d at 555. Norwest challenges only the first requirement, that ACORN's individual members would have standing.[7] The Complaint sets out essentially identical allegations as to Isaac and other members of ACORN, as to where they live and the injuries they have suffered. Accordingly, the court concludes that Norwest's challenge to ACORN's standing must fail for the same reason the challenge to Isaac's standing fails.

### C. *Discriminatory Lending Claim*

 Norwest also argues that the discriminatory lending claim should be dismissed as it fails to plead a *prima facie* case under 42 U.S.C. § 3605(a), relying on *Thomas v. First Federal Savings Bank of Indiana,* 653 F.Supp. 1330 (N.D.Ind.1987). This argument fails for two reasons. First, that holding was made in the context of a motion for dismissal pursuant to Fed. R.Civ.P. 41(b), at the end of the presentation of the plaintiff's case at trial. Norwest offers no support for its implication that the details of the *prima facie* case must also be pleaded at the initial stage, and at least some case law is to the con-

---

**6.** Norwest's reliance on *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) is similarly misplaced, as in that case, although decided on a motion to dismiss for failure to state a claim upon which relief can be granted, the district court considered not only the complaint but also "extensive supportive materials submitted by petitioners" at the court's request. *Id.* at 497, 95 S.Ct. 2197.

**7.** Norwest also challenges ACORN's "organizational standing," that is, standing based on direct injury to ACORN itself, but the court need not address that argument since that is not the basis ACORN asserts for standing.

trary. "[T]he prima facie case under this analysis is an evidentiary standard" and "[u]nder the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 926 (8th Cir.1993); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249–50 (9th Cir.1997). In the absence of guidance from the Fifth Circuit, the court is persuaded by and adopts the reasoning of *Ring* and *Gilligan.*

Second, the court in *Thomas* arrived at those elements by "[d]rawing from the lesson of these earlier cases *and tailoring it to the facts here.*" *Thomas*, 653 F.Supp. at 1338 (emphasis added). Courts considering claims of racial discrimination have consistently chosen to establish precise requirements tailored to specific fact patterns rather than a standardized formulation that would cover all cases but be less useful. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); *see also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (the *McDonnell Douglas* pattern is not "the only means of establishing a prima facie case of individual discrimination" and did not "create an inflexible formulation"). The elements of a *prima facie* case of lending discrimination announced in a case where plaintiffs sought a housing loan (first-party standing) therefore are not necessarily applicable to a case where plaintiffs allege indirect injury as a result of lending discrimination (third-party standing).

## IV. *Conclusion*

Viewing the Complaint in the light most favorable to Plaintiffs and with every doubt resolved in their favor, the court concludes that Norwest has not demonstrated that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Accordingly, Norwest is not entitled to dismissal of this action for failure to state a claim upon which relief can be granted. The court makes no determination as to the viability of Plaintiffs' claims, but their allegations in the Complaint are sufficient to allow the case to proceed. The court therefore denies Norwest's Motion to Dismiss.