SMITH, Circuit Judge.
Denise Blomker appeals the district court’s[1] dismissal under Federal Rule of Civil Procedure 12(b) of her pro se complaint alleging a sexual harassment claim based on hostile work environment and a retaliation claim against her employer, the Department of the Interior (“Department”). We affirm.
*1054 I. Background
We accept as true the factual allegations in Blomker’s pro se complaint at this stage of the proceedings. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009).
Blomker worked for more than four years at the Department as a secretary in the Migratory Birds Division of the U.S. Fish and Wildlife Service. The Department informed Blomker of its intent to terminate her on April 10, 2014. According to the Department’s letter, Blomker’s termination was based on Blomker (1) calling her supervisor “a god-d***ed f***ing liar” and grabbing a supervisor’s arm and twisting it, (2) stating that she would send copies of e-mails in her possession to the Equal Employment Opportunity Commission (EEOC) and the court, and (3) copying unnecessary people on e-mails after repeated warnings to cease doing so. Blomker was terminated on May 8, 2014.
Blomker filed a pro se complaint against the Department, alleging, inter alia, a sexual harassment claim based on hostile work environment and a retaliation claim against the Department.[2] In support of her sexual harassment claim based on hostile work environment, Blomker alleges seven incidents of harassment by two different men over a nearly three-year period. They are as follows:
(1)On February 24, 2010, Blomker’s coworker, Tom Will, “moved his finger toward [a] button [on Blomker’s shirt] and stopped approximately three inches from putting his finger between [her] breasts.” Will then said, with “a smirk on his lips,” “I can put a button right there.”
(2) On September 9, 2010, Will called out Blomker’s name. “As he came toward [Blomker,] [she] noticed he was sexually aroused (having an erection).” With “a smirk on his face,” Will “walked up and stood extremely close to [Blomker] that [she] stepped back from’him.”
(3) “On several occasions” during February and March 2010, Will, with “a smirk on his face,” (a) “walked over to the candy basket on the window sill, picked it up, swung the candy basket[,] and then ... picked up the candy that had fallen onto the floor and put it back into the candy basket”; and (b) “[d]ug into the plastic container of candy, moving the candy about and making extra noise while he was playing with the candy.” Blomker believed that Will engaged in this _ conduct to get her attention.
(4) On December 7, 2010, Will “walked up behind [Blomker] and stood extremely close.” According to Blomker, had she “backfed] up a couple of inches, [she] would have bumped into [Will].”
(5) On April 14, 2011, Will was on his cell phone outside of Blomker’s cubicle and briefly blocked her from exiting her cubicle.
(6) On both November 19 2012, and December 6, 2012, Blomker’s coworker, Richard Rottman, who sat in the cubicle adjacent to Blomker, “was picking at the seam located in the crotch of his pants — his legs spread apart 180 degrees while [Blomker] was having a conversation with him.” *1055 (7) On January 10, 2013, Rottman had an erection while speaking to Blomker.
Blomker characterizes these incidents as “attacks” and “solicitations.” She alleges that management at the Department “turned their [sic] backs on me, refused twice accommodations to help alleviate my visual and physical contact with the two perpetrators. I believe this to be a result of the EEO complaints I have made and subsequent filing with the District Court.”
With regard to her retaliation claim, Blomker cites several situations that she alleges constitute retaliation based on her reporting discrimination. The district court accurately summarized these situations as follows:
1) her work performance or work attendance was criticized and she feels that she has been unnecessarily blamed and criticized at work (see, e.g., [Complaint] ¶¶ 18-20, 22-26, 29, 30, 32, 37-42, 44A, 44C-D, 45-50, 53, 54, 59, 61, 65, 66, 68, 70-72, 75, 78-82, 84, 85, 87, 89);
2) she was not kept up-to-date on office news or invited to office events (see, e.g., id. ¶¶ 19, 34, 55-57, 59, 60);
3) there was poor communication between her and her coworkers and supervisors (see, e.g., id. ¶¶ 18, 19, 24, 34, 41, 44D, 52, 54, 63, 67, 83);
4) people were talking about her EEO complaints (see, e.g., id. ¶¶ 28, 58, 73);
5) her coworkers sometimes did her job, especially when she was away from the office (see, e.g., id. ¶¶ 44D, 44E, 44G, 56, 62, 63, 83, 88);
6) she had antagonistic relationships with her bosses (see, e.g., id. ¶¶ 19, 23, 27, 29, 44B, 44D, 53, 54, 67-69, 75, 77, 78, 83, 91);
7) she did not receive a raise and was not permitted to take classes (see, e.g., id. ¶¶ 32, 33, 35, 76, 77); and
8)she was suspended and ultimately terminated (see, e.g., id. ¶¶ 74, 93).
(Footnote omitted.)
The Department filed a Rule 12(b) motion to dismiss Blomker’s complaint on the basis that Blomker failed to adequately exhaust her administrative remedies. It also argued that she could not state a claim for discrimination or retaliation. The district court expressly declined to decide the exhaustion issue, finding only that Blomker could not state a claim for discrimination or retaliation. Blomker appeals.
II. Discussion
Blomker argues that the district court erred in dismissing her sexual harassment and retaliation claims because she has set forth sufficient allegations to support both claims. We review de novo a district court’s dismissal of a complaint based upon Rule 12(b)(6), “taking the facts alleged in the complaint as true.” Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013) (citation omitted).
“To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quot ing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiffs claim is facially plausible where “the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Id. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). “The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.” Id. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).
*1056 “In Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, not a pleading, standard.” Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (citing Swierkiewicz, 534 U.S. at 510, 512, 122 S.Ct. 992). Under Swierkiewicz, “[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage.” Id. at 54 (citing Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992). “The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.” Id.
However, “elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit.” Id. Instead, such “elements are part of the background against which a plausibility determination should be made.” Id. (citations omitted). In summary, “the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.” Id. As we have previously explained:
[A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant’s intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.
Gregory v. Dillard’s, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (alteration in original) (emphasis added) (quotations and citations omitted).
Does Blomker’s complaint set forth sufficient factual allegations to provide the grounds upon which her sexual harassment claim based on hostile work environment and retaliation claim rest? We conclude that it does not.[3]
A. Sexual Harassment Claim Based on Hostile Work Environment
To establish the elements of a sexual harassment claim based on a hostile environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir. 1999).
“The fourth element involves both objective and subjective components.” Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 801 (8th Cir. 2009) (citation omitted). It requires that “[t]he harassment ... be ‘severe or pervasive enough to create an objectively hostile or abusive work environment’ and the victim must subjectively believe her working conditions have been altered.” Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).
“The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of *1057 actionable harassment.” Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). For that reason,
[t]he standards for a hostile environment are demanding, and “conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment.” Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 980 (8th Cir. 2003). "When evaluating a hostile environment, we look at the totality of the circumstances, “including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee’s work performance.” Vajdl [u Mesabi Acad, of KidsPeace, Inc.], 484 F.3d [546,] 551 [ (8th Cir. 2007) ].
Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 420 (8th Cir. 2010).
“More than a few isolated incidents are required,” and the alleged harassment must be “so intimidating, offensive, or hostile that it poisoned the work environment.” Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (quotation and citations omitted). “The [Supreme] Court often has made the point that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.” Al-Zubaidy, 406 F.3d at 1039 (quotations and citations omitted). In fact, the Supreme “Court implores lower courts to apply the demanding harassment standards to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.” Id. (emphasis added) (quotations and citation omitted).
Accepting as true the factual allegations contained in Blomker’s complaint and granting her the benefit of all reasonable inferences that can be drawn from those allegations, see Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010), we find, as a matter of law, that the facts alleged in Blomker’s complaint fail to show harassment so severe or pervasive that they satisfy the high threshold for a sexual harassment claim based on hostile work environment. In other words, we find that Blomker has failed to set forth “sufficient factual allegations” that entitle her to relief. See Gregory, 565 F.3d at 473.[4]
*1058 As the district court noted, although the behavior alleged “might have been vile or inappropriate, the facts alleged in the complaint do not rise to the level of actionable sexual harassment.” As noted supra, the seven alleged incidents spanned nearly a three-year period by two different men. See Duncan v. Gen. Motors Corp., 300 F.3d 928, 934-35 (8th Cir. 2002) (reversing a million dollar judgment awarded to a plaintiff and determining, as a matter of law, that plaintiff failed to show severe or pervasive sexual harassment based on five harassing incidents over a two-year period: a proposition for a relationship; improper touching of the plaintiffs hand on multiple occasions; a request the plaintiff sketch a sexually objectionable planter; the posting of a “Man Hater’s Club” poster; and a request the plaintiff “type the He — Men Women Haters beliefs”).
Furthermore, none of the alleged incidents involved actual touching. And some of the allegations, such as Will playing with candy, are not definitively sexual in nature based on the facts alleged. “Numerous cases have rejected hostile work environment claims premised upon facts equally or more egregious than the conduct at issue here.” Id. (citations omitted); see also McMiller v. Metro, 738 F.3d 185, 188 (8th Cir. 2013) (holding that male supervisor’s inappropriate behavior toward female state employee was not sufficiently severe or pervasive so as to alter terms and conditions of her employment where supervisor kissed employee on two occasions, placed his arms around her or attempted to do so three times, and requested that she remove an ingrown hair near his chin); Anderson v. Family Dollar Stores of Ark, Inc., 579 F.3d 858, 862 (8th Cir. 2009) (holding evidence insufficient to establish a hostile work environment claim where supervisor rubbed employee’s back and shoulders, called her “baby doll,” “ac-cus[ed] her of not wanting to be 'one of [his] girls,’ ” suggested in a long-distance phone call “that she should be in bed with him,” and “insinuat[ed] that she could go farther in the company if she got along with him”); LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1100-03 (8th Cir. 2005) (holding that a plaintiff who asserted that a harasser asked him to watch pornographic movies and to masturbate together, suggested that the plaintiff would advance professionally if the plaintiff caused the harasser to orgasm, kissed the plaintiff on the mouth, “grabbed” the plaintiffs buttocks, “brush[ed]” the plaintiffs groin, “reached for” the plaintiffs genitals, and “briefly gripped” the plaintiffs thigh, had not established actionable harassment); Ottman v. City of Independence, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for *1059 the jury where the conduct consisted of belittling and sexist remarks on almost a daily basis over a four-year period); Alag-na, 324 F.3d at 977-79, 980 (concluding the coworker’s conduct was inappropriate, but not sufficiently severe or pervasive where it included calls to the plaintiffs home, frequent visits to her office, discussions about relationships (not including sexual details) with his wife and other women, touching the plaintiffs arm, saying he “loved” her and she was “very special,” placing romance novels in her faculty mailbox, and invading her personal space).
For these reasons, we affirm the district court’s dismissal of Blomker’s claim of hostile work environment based on sexual harassment.
B. Retaliation
We now turn to Blomker’s retaliation claim. Title YII makes it an unlawful employment practice for an employer to discriminate against its employees for opposing any unlawful employment practice. 42 U.S.C. § 2000e-3(a); see also Guimaraes v. SuperValu, Inc., 674 F.3d 962, 977 (8th Cir. 2012). We apply the retaliation provisions of § 2000e-3(a) broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted with a good faith, objectively reasonable belief that the practices were unlawful. Guimaraes, 674 F.3d at 977-78.
“[Retaliation must be the ‘but for’ cause of the adverse employment action.” Jackman v. Fifth Judicial Dist. Dep’t of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013) (“The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.”)).
Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be “because” a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a “but-for” cause of the employer’s adverse action. See [Nassar, 133 S.Ct. at 2533]. It is not enough that retaliation was a “substantial” or “motivating” factor in the employer’s decision. See id.
Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90-91 (2d Cir. 2015) (emphasis added).
Here, Blomker points to four “specifications” from the Department’s letter of removal — which she attached as an exhibit to her complaint — that she argues constitute direct evidence of retaliation, establishing a causal nexus between her protected activity and the materially adverse actions alleged in her complaint. Two of the these specifications mention her intent to file an EEO complaint.
Nonetheless, we find that Blomker’s purported “direct evidence” of retaliation fails as a matter of law for lack of causation. Blomker has failed to “plausibly allege that the retaliation was a ‘but-for’ cause of [the Department’s] adverse action.” See id. This is because Blomker attached to her complaint the Department’s letter of removal, which sets forth her reasons for termination. As the Department points out, while the aforementioned “specifications” in the letter of removal “demonstrate[ ] ... that her threats [to file an EEO complaint and lawsuit] may have motivated the Department (at least in part) to discharge her,” that letter also includes other “specifications” unrelated to any protected activity. These “specifications” include: (1) calling her supervisor a “god-d***ed f***ing liar” and grabbing and twisting her forearm, and (2) not complying with her supervisor’s directive to stop copying people beyond the *1060 scope of a discussion with her supervisor. In the “Reason for Proposing Removal” in the letter of removal, the Department characterized the nature of Blomker’s misconduct as “serious,” focusing exclusively on her assault upon her supervisor. The letter provides, in relevant part:
Under no circumstance should an employee engage in unwelcome physical contact with a supervisor. There is no indication that Ms. Jones touched you; rather, she had to use her arm/finger to reestablish her personal space since you were uncomfortably close. Under those circumstances, you not liking Ms. Jones pointing her finger at you does not warrant your grabbing her arm and/or twisting it. Further, it is evident that you and Ms. Jones have a contentious supervisor-employee relationship, yet it appears you took measures to create that confrontation on March 25, 2014, by rushing to get in the elevator car. with Ms. Jones. Such aggressive behavior on your part is contrary to statements you have made recently regarding your fear of being in meetings with your supervisor or other Division or Service staff without the presence of a police officer or security guard. Video footage from the lobby of the Regional Office clearly showed how quickly you moved to put yourself in a confined space (elevator) with your supervisor, strongly suggesting you wanted the confrontation. Ms. Jones was distraught and intimidated after the incident. The incident was disruptive to the workplace, resulting in shouting and yelling heard by a number of employees within the work area, a work area that included the elevator lobby (a public area), your cubicle, and the connecting hallways (a minimum of at least 75 feet past multiple offices and a conference room. Due to the seriousness of that incident, immediately thereafter you were placed and have remained on administrative leave.
(Emphases added.) The letter also cited Blomker’s past disciplinary record: a letter of reprimand on March 21, 2013, for inappropriate conduct[5] and a seven-day suspension from February 2, 2014, through February 8, 2014, for inappropriate conduct and failure to follow a supervisory directive.[6]
Blomker’s inclusion of the letter of removal in her complaint shows, on its face, that Blomker’s protected activity was not a but-for cause of the alleged adverse action by the Department. We therefore affirm the district court’s dismissal of Blomker’s retaliation claim.
III. Conclusion
Accordingly, we affirm the judgment of the district court.

. The Honorable John R. Tunheim, Chief Judge, United States' District Court for the District of Minnesota.

. Blomker indicated in her complaint that she was alleging discrimination based on six different protected classes, retaliation, and sexual harassment. The district court construed her complaint as stating three causes of action: disability discrimination, sexual harassment, and retaliation. Only the sexual harassment and retaliation claims are at issue in this appeal.

. Because we conclude that Blomker failed to state a claim for sexual harassment or retaliation, we need not address the exhaustion issue.

. Both our sister circuits and district courts within this circuit have similarly dismissed hostile work environment claims, some based on sexual harassment, for failure to state a claim under Rule 12(b)(6). See, e.g., Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015) (holding that allegations that African-American employee's supervisor at city agen- ■ cy made negative statements about employee to another supervisor, distanced herself from employee when she was nearby, declined to meet with employee, and wrongfully reprimanded employee were insufficient to allege racial discrimination that was so severe or pervasive that it created an abusive work environment and altered conditions of her employment, as required to establish a hostile work environment); Pittman v. Bob, 520 Fed. Appx.101, 102 (3d Cir. 2013) (unpublished per curiam) (holding that allegations that foreman for employment agency’s client, who was allegedly homosexual, asked employee if he was alright as employee was going on break, that foreman stood in an "uncomfortable” proximity to employee while performing job, and that, after summoning other workers to help employee with task, foreman placed his hands on employee's shoulders and said “You’re lucky I like you,” and “I like you because you're so big,” did not state claim for hostile work environment, where conduct was not so severe or pervasive as to alter terms of employment or create abusive environment); Wadhwa v. Sec'y, Dep’t of Veterans Affairs, 505 Fed.Appx. 209, 213 (3d Cir. 2012) (unpublished per curiam) (holding that a single complaint made by nurse about performance of federal employee over period of five months was insufficient to constitute pervasive and regular behavior required to sustain Title VII *1058 hostile work environment claim); Ruddy v. U.S. Postal Serv., 455 Fed.Appx. 279, 284 (3d Cir. 2011) (unpublished) (holding that United States Postal Service employee’s supervisors’ alleged conduct in telling employee that he was to work faster and leave the office earlier did not amount to a hostile work environment based on employee’s age and disability because such conduct was not severe or pervasive); Griffey v. Daviess/DeKalb Cty. Reg’l Jail, No. 10-06099-CV-SJ-DGK, 2012 WL 10881, at *5 (W.D. Mo. Jan. 3, 2012) (holding that plaintiff failed to state a claim for hostile work environment because the plaintiff did not "establish[ ] that the harassment was so severe and pervasive to be legally actionable under both an objective and subjective standard”); Sullivan-Robinson v. Ark. Parole Bd., No. 4:11CV00140 SWW, 2011 WL 3235904, at *4 (E.D. Ark. July 28, 2011) ("Here, plaintiff alleges Wallace made inappropriate statements to her three times over a two-week period. She also alleges that at a later date she overheard two additional offensive comments Wallace made to another employee. The Court finds as a matter of law that these allegations, while establishing conduct that was offensive, unprofessional, and boorish, fail to state a claim of hostile environment sexual harassment.”).

. Specifically, Blomker was reprimanded for "raising [her] voice to [her] supervisor, ignoring and walking away from [her] supervisor during a conversation, and raising [her] voice in a discourteous and disrespectful manner in the open workplace.”

. This suspension was based, in part, on Blomker’s
failure to follow a supervisory directive related to when [she] again copied Mr. Woo-ley and Mr. Melius on an email to employees with the Federal Executive Board (FEB) of Minnesota notifying them you would be resigning from the FEB Diversity Council after being ordered on December 23, 2013, to cease and desist copying people on emails beyond the scope of a discussion unless they specifically asked to be copied.