# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1907
_____

Joanna Warmington

*Plaintiff - Appellant*

v.

Board of Regents of the University of Minnesota

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 16, 2021
Filed: May 24, 2021

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Joanna Warmington resigned from the University of Minnesota Duluth under threat of imminent termination. She sued the Board of Regents of the University of Minnesota, asserting the University constructively terminated her and subjected her

to a hostile work environment. The district court[1] dismissed her complaint for failing to plausibly plead the essential elements of her claims. *See* **Fed. R. Civ. P. 12(b)(6)**. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Joanna Warmington was the head coach of the women's cross-country and track-and-field teams at the University of Minnesota Duluth for nine years. She resigned in 2018, after the University threatened to terminate her following an outside-law-firm's investigation into her alleged misconduct. Student-athletes had reported to the University that, among other things, she made unwanted sexual comments, engaged in unwelcome conduct of a sexual nature, and discussed their weight and diet.

Warmington sued, asserting the University violated her rights under Titles VII and IX and the Equal Pay Act. She claims it constructively terminated her on the basis of her sex, using the misconduct allegations as pretext. She pleads she was generally treated differently than other coaches and athletes, and terminated for behavior that was commonplace. She also claims the University subjected her to a hostile work environment on account of her sex. She pleads that other coaches and staff insulted her and made sexual comments and gestures.

The district court dismissed her complaint. ***Warmington v. Bd. of Regents of Univ. of Minnesota***, 455 F. Supp. 3d 871 (D. Minn. 2020). The court ruled she did not plausibly plead a claim for sex discrimination, permitting no reasonable inference that the University terminated her because of her sex. The court also ruled

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

she did not plausibly plead a claim for hostile work environment, as the incidents were not severe enough to meet the pleading requirements.[2]  Warmington appeals.

## II.

This court reviews de novo the grant of a motion to dismiss.  *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (same).  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (the plausibility standard is not akin to a "probability requirement").  The complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 928 (8th Cir. 1993) (citation omitted).

This court "construe[s] [a] complaint liberally." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (alterations added) (internal quotations omitted).  The complaint "should be read as a whole, not parsed piece by piece to determine

---

[2]The district court also dismissed the Equal Pay Act claim as barred by the two-year statute of limitations.  *See* **29 U.S.C. § 255(a)**.  It dismissed the Title IX retaliation claim for failing to plausibly allege that her protected activity was a determinative factor in the University's decision to terminate her. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 985 (8th Cir. 2011).  Because Warmington did not brief these issues, they are not preserved for appeal. *See F & H Inv. Co. v. Sackman-Gilliland Corp.*, 728 F.2d 1050, 1052 (8th Cir. 1984).

whether each allegation, in isolation, is plausible." ***Wilson***, 850 F.3d at 371 (citation omitted).

While a plaintiff "need not set forth 'detailed factual allegations,' or 'specific facts' that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." ***Gregory v. Dillard's, Inc.***, 565 F.3d 464, 473 (8th Cir. 2009) (en banc), *quoting* ***Twombly***, 550 U.S. at 555, *and* ***Erickson v. Pardus***, 551 U.S. 89, 93 (2007) (per curiam). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." ***Ashcroft***, 556 U.S. at 678, *quoting* ***Twombly***, 550 U.S. at 555. Legal conclusions "must be supported by factual allegations." ***Id.*** at 679. A district court, therefore, is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." ***Gregory***, 565 F.3d at 473 (internal quotations omitted). But when there are "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." ***Ashcroft***, 556 U.S. at 679.

At the pleading phase, a plaintiff need not plead facts establishing a prima facie case for their Title VII claim. *See* ***Wilson***, 850 F.3d at 372; ***Ring***, 984 F.2d at 926–27. In *Swierkiewicz*, the Supreme Court "negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, not a pleading, standard." ***Blomker v. Jewell***, 831 F.3d 1051, 1056 (8th Cir. 2016) (citation omitted), *citing* ***Swierkiewicz v. Sorema***, 534 U.S. 506, 512 (2002). Because the prima facie model is not a pleading standard, "there is no need to set forth a detailed evidentiary proffer in a complaint." ***Id.*** (citation omitted). *See* ***Ring***, 984 F.2d at 926–27.

However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." ***Blomker***, 831 F.3d at 1056 (alteration in original) (citation omitted). The allegations in a complaint must " 'give *plausible support* to the reduced prima facie requirements that arise

-4-

under *McDonnell Douglas*,' which in turn 'reduces the facts needed to be *pleaded* under *Iqbal*.'" **Wilson**, 850 F.3d at 372 (first emphasis added), *quoting* **Littlejohn v. City of New York**, 795 F.3d 297, 310, 312 (2d Cir. 2015). *See* **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802 (1973). The elements are "part of the background against which a plausibility determination should be made." **Blomker**, 831 F.3d at 1056, *quoting* **Rodriguez-Reyes v. Molina-Rodriguez**, 711 F.3d 49, 54 (1st Cir. 2013) ("This approach is fully consistent with *Swierkiewicz*'s dictates"). The elements of a prima facie case "may be used as a prism to shed light upon the plausibility of the claim." **Id.** (citation omitted). Through this prism, the complaint "*must include sufficient factual allegations to provide the grounds on which the claim rests*." **Id.** (emphasis in original), *quoting* **Gregory**, 565 F.3d at 473.

A.

Warmington argues the district court erred in dismissing her Title VII sex discrimination claim for failing to state a claim to relief that is plausible on its face.

Warmington alleges the University's stated reason for terminating her was pretext for discrimination, basing her sex discrimination claim on indirect evidence.[3] Without direct evidence, a plaintiff establishes a prima facie case of sex discrimination by showing: (1) she belongs to a protected group; (2) she was qualified for her former job; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See* **McDonnell Douglas**, 411 U.S. at 802. *See also* **Ring**, 984 F.2d at 926. Once a prima facie case is established, the defendant must articulate a "non-discriminatory reason for the allegedly discriminatory action." **Tuttle v. Henry J. Kaiser Co.**, 921 F.2d 183, 186 (8th Cir. 1990). *See* **McDonnell Douglas**, 411 U.S. at 802. If the defendant meets

---

[3]In contrast with indirect evidence, direct evidence "provides a strong causal link between the alleged discriminatory bias and the adverse employment decision. It most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." **McCullough v. Univ. of Arkansas for Med. Scis.**, 559 F.3d 855, 861 (8th Cir. 2009) (citations omitted).

this burden, the plaintiff must then show "the articulated reason is mere pretext for a discriminatory motive." **Tuttle**, 921 F.2d at 186. *See generally* **Blomker**, 831 F.3d at 1056 (using the elements of a prima facie case "as a prism to shed light upon the plausibility of the claim").

Warmington plausibly pled that she belongs to a protected group, was qualified for her former job, and suffered an adverse employment action, a termination. *See* **McDonnell Douglas**, 411 U.S. at 802. She does not, however, plausibly plead that the circumstances of her termination give rise to an inference of discrimination. Her pleading that the University terminated her on the basis of her sex is a legal conclusion. This court is not bound by this conclusion, which is not supported by the factual allegations in her complaint. *See* **Ashcroft**, 556 U.S. at 678.

Warmington's factual allegations give rise to the inference that she was treated differently than other coaches and athletes. She pled that unlike herself, "other coaches" were not terminated for disciplining athletes and giving them personal advice on their mental health and sexuality. She pled that the University did not restrict "any other coach" from discussing nutrition and body weight with athletes—a third alleged reason for her termination. She pled that while she was terminated for her sexual expression, other coaches and athletes (including other women) were free to practice in running bras or revealing shorts and be sexually expressive. She pled that other coaches and administrators, "mostly male," were not terminated for making sexual or offensive comments. She pled that the male coaches for the men's football, basketball, and soccer teams, as well as the men's volleyball coach (sex unspecified), received a car as part of their compensation packages. She pled that until 2016, she was paid at least $5,000 a year less than the male coach of the men's cross-country and track-and-field teams.

Warmington's factual allegations also give rise to the inference that the University treated the women's cross-country and track-and-field teams differently than "other teams." She pled that unlike them, her teams' budgets were invaded to cover expenses for men's football and hockey. She pled that unlike them, her teams'

-6-

transportation, equipment, and training costs were not fully covered by the University. She pled that football had priority for trainers and University facilities. She pled that while her teams had scholarship athletes (unlike other teams, such as men's cross-country and track-and-field), she also had to field 50 to 60 non-scholarship athletes (of widely varying skill and commitment) to "allow the male revenue sports to have their desired level of scholarship athletes" under Title IX.

These factual allegations show the University treated Warmington and her teams differently from other coaches and teams. But the complaint, read as a whole, does not plausibly give rise to the inference of discrimination on the basis of sex as the reason for her termination. She does not specify the sex of all the "other coaches" she was treated differently than, leaving this court unable to conclude she was only treated differently than other *male* coaches. She even pleads the University permitted other women to do things that she was terminated for, such as female athletes training in running bras. It is not reasonably apparent from her pleadings how her different treatment from "other coaches" and athletes (including other women, and individuals of unspecified sex) infers sex discrimination as the reason for her termination—especially when, as detailed in the investigation she incorporated into her complaint, some of her female athletes reported "credible" misconduct not alleged as done by other coaches. It is similarly not reasonably apparent how her teams' different treatment infers sex discrimination as the reason for her termination. Her allegations of different treatment from other coaches and athletes, and inequities between her teams and other teams, are insufficient as a matter of law. She does not state a claim to relief that is plausible on its face or give the University a fair notice of the grounds upon which her claims rest. *See id.*; ***Ring***, 984 F.2d at 928.

The closest Warmington comes to stating a plausible claim is her allegation the University treated female coaches differently than male coaches after it did not renew Shannon Miller's employment contract in 2014. She, the former women's hockey coach, successfully sued the University for sex discrimination. *See **Miller v. Bd. of Regents of Univ. of Minnesota***, 2019 WL 586674 (D. Minn. 2019).

Warmington alleges, as a result, the University "singled out" female coaches, ordering them to take "affirmative steps to promote and support the Athletic Department." At its request, Warmington wrote two public letters in support of the University.

While these pleadings allege the University treated employees differently based on sex, they do not plausibly give rise to an inference of discrimination as the reason for Warmington's termination. This court agrees with the district court: "The problem is that the sex of the athletes Warmington coached, their unequal treatment, and her advocacy for their better treatment say nothing about whether Warmington's sex was a motivating factor in the University's decision to terminate her employment." Neither does her treatment by the University after Miller's firing. She pled she fully complied with the University's requests, writing two public letters in support. There is no reasonable inference the reason for her termination was discriminatory when she did everything she was asked, without complaints from the University. Her allegations do not support a wrongful termination claim.

Warmington also argues the University used the misconduct allegations against her as pretext to terminate her on the basis of her sex. She pled that the investigation was predetermined and that the University conspired with athletes to make a case to terminate her. But even considering the allegation, her complaint is insufficient. Paragraph 80 of the complaint specifically alleges that the real reason for her removal was because she was "not going along quietly when the budget for her athletes was continually cut to benefit male sports." Thus, like the allegations of unequal treatment of the teams she coached, the allegation that the misconduct allegations against her were pretextual does not plausibly allege that *Warmington's* sex was a motivating factor in the decision to terminate her. Even if the stated reason for her termination was pretextual, she has not stated a claim for relief that is plausible on its face.

B.

According to Warmington, the district court erred by dismissing her Title VII hostile work environment claim for failing to state a claim to relief that is plausible on its face.

To establish a prima facie case for hostile work environment, a plaintiff must show:  (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action.  **Blomker**, 831 F.3d at 1056 ("the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim").

The fourth element—the harassment affected a term, condition, or privilege of employment—involves "both objective and subjective components." **Id.**, *quoting* **Sandoval v. Am. Bldg. Maint. Indus., Inc.**, 578 F.3d 787, 801 (8th Cir. 2009).  At the pleading phase, the court must determine whether the alleged harassment is "severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." **Id.** (internal quotations omitted).

To determine whether a complaint alleges an objectively hostile work environment, the court looks at the "totality of the circumstances."  **Id.** at 1057 (citations omitted).  The court may consider circumstances such as the "frequency and severity of the discriminatory conduct," whether the conduct was "physically threatening or humiliating, as opposed to a mere offensive utterance," and whether the "conduct unreasonably interfered with the employee's work performance." **Id.** (internal quotations omitted) (citations omitted).  A hostile work environment claim must allege more "than a few isolated incidents." **Id.** (citation omitted).  The alleged

harassment "must be so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (internal quotations omitted).

The Supreme Court has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Id.* at 1056–57 (citation omitted). The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Id.* at 1057 (internal quotations omitted) (citations omitted). Courts must "*filter out complaints* attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (emphasis in original), *quoting **Al-Zubaidy v. TEK Indus., Inc.***, 406 F.3d 1030, 1039 (8th Cir. 2005); ***Nitsche v. CEO of Osage Valley Elec. Co-op.***, 446 F.3d 841, 845–46 (8th Cir. 2006) (same). Even "vile or inappropriate" behavior may be insufficient to rise to the level of an actionable hostile work environment claim. ***Blomker***, 831 F.3d at 1058.

Applying this analysis, this court in *Blomker* affirmed the dismissal of a hostile work environment claim. *See* **Fed. R. Civ. P. 12(b)(6)**. Blomker alleged her coworkers made sexually suggestive gestures and comments to her. ***Blomker***, 831 F.3d at 1054–55. This court held that the allegations in her complaint failed to "show harassment so severe or pervasive that they satisfy the high threshold for a sexual harassment claim based on hostile work environment." *Id.* at 1057. This court emphasized that the seven incidents of harassment spanned a three-year period by two different men, and that the allegations did not concern actual touching. *Id.* at 1058.

Warmington alleges "over a number of years," other coaches and staff made sexualized comments and gestures to her.[4] She pled:

---

[4]Warmington alleges two gestures occurred daily: (1) the male athletic director and assistant athletic director made a gesture with their hands and asked her to "blow them up," and (2) a female athletic supervisor hugged athletes. These allegations are insufficient as a matter of law. *See **Blomker***, 831 F.3d at 1057–58.

- A men's track coach publicly said that Warmington was "overly emotional and should coach more like him."
- The male head coach of the men's cross-country and track-and-field team took pictures of Warmington without her consent to later harass her.
- That head coach swore and made crude remarks in front of Warmington, but suggested she was menstruating if she used similar language.
- That head coach referred to a female compliance officer as a c**t in front of Warmington.
- That head coach allowed male athletes to change in front of the women's team.
- Male coaches made gender-based and sexual comments about female athletes.
- A female athletic supervisor told Warmington to "hustle" in front of other coaches, patted her on the head for doing a "good job," and told her she looked "beautiful" and was "such a tiny little thing"—not done to male coaches.

Warmington's allegations, though perhaps describing vile or inappropriate behavior, do not rise to the level of actionable hostile work environment as a matter of law. *See id.* Many of the incidents were not directed at her. *Cf. **Tovar v. Essentia Health***, 857 F.3d 771, 775–76 (8th Cir. 2017) (rejecting a plaintiff's claim that she was discriminated against because of her son's sex). Incidents directed at her did not concern actual touching or physically threatening conduct. *See **Blomker***, 831 F.3d at 1057. Sporadic, they spanned "a number of years," and were not so intimidating, offensive, or hostile that they poisoned the work environment. *See id.* "Numerous cases," including *Blomker*, have rejected hostile work environment claims "premised upon facts equally or more egregious than the conduct at issue

here." *Id.* at 1058 (compiling cases). Warmington failed to state a claim to relief that is plausible on its face.

* * * * * * *

The judgment is affirmed.

_____