# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 23-2266

———————————————

Thomas Clobes

*Plaintiff - Appellant*

v.

3M Company

*Defendant - Appellee*

———————————

Appeal from United States District Court
for the District of Minnesota

———————————

Submitted: May 7, 2024
Filed: July 5, 2024

———————————

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.

———————————

SHEPHERD, Circuit Judge.

Plaintiff Thomas Clobes is a Christian who objected to his employer 3M's COVID-19 vaccination policy. He sued 3M, asserting religious discrimination and hostile work environment claims under Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act (MHRA). In this appeal, we must decide whether

the district court[1] properly granted 3M's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and whether the district court properly denied Clobes leave to amend his complaint. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

We recount the facts as alleged in Clobes's complaint. See Ingram v. Ark. Dep't of Corr., 91 F.4th 924, 926 (8th Cir. 2024) ("In reviewing a motion to dismiss, we accept 'as true all facts alleged in the complaint.'" (citation omitted)). In September 2021, Clobes was employed at a 3M manufacturing plant in Hutchinson, Minnesota. At that time, 3M mandated that all salaried employees become vaccinated for COVID-19 by December 8, 2021. Clobes was told that he would be terminated if he did not become vaccinated. Clobes objected to the requirement because, as a practicing Christian, he had religious objections to receiving a COVID-19 vaccine, although the details of that objection were "between God the Almighty Father and [him]self." He also had safety concerns with the COVID-19 vaccine because his six-month-old granddaughter had tragically died thirty-six hours after receiving a series of vaccines typically given to children of her age.

Clobes stated his objections in a religious accommodation request sent to 3M on November 18, 2021. The request asked 3M to allow Clobes to "continue to follow the same accommodations [he] ha[d] for the last several months," including wearing a mask when unable to socially distance, keeping six feet apart from others, cleaning his work area, and not attending work when sick. Separately, Clobes emailed 3M officials to share the story of his granddaughter's death.

3M did not immediately grant the request. Instead, 3M asked Clobes a series of follow-up questions, such as what made the COVID-19 vaccine different from other vaccines Clobes had not previously declined, and what about his religious

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

beliefs prevented him from taking the COVID-19 vaccine but not other types of medicine. 3M requested that Clobes respond by December 10, 2021.[2] Meanwhile, 3M sent "daily . . . email and loudspeaker announcements . . . to receive the COVID-19 vaccine." Because he was not vaccinated, Clobes was required to wear a mask.[3] On December 10, 2021, Clobes received an email from 3M explaining that the vaccine requirement had been lifted because the Federal Contractor Mandate was enjoined.[4]

After filing a complaint with the Equal Employment Opportunity Commission and receiving notice of his right to sue, Clobes sued 3M. He asserted religious discrimination and hostile work environment claims under both Title VII and the MHRA. Clobes's complaint alleged that he felt "harassed" by 3M's policy and the "continual fear that he was going to be terminated for not taking the vaccine" caused him emotional distress. Ultimately, Clobes "felt as though his religious beliefs were on trial," and he "felt discriminated against because he had to justify not taking" the vaccine. He characterizes these experiences as emotionally traumatizing.

---

[2]Counsel for Clobes has repeatedly stated that 3M *denied* the request. But when asked by the district court to clarify this allegation, counsel conceded that "[3M] never granted the religious exemption." Seemingly undeterred, in two briefs before this Court counsel stated that Clobes's "sincere religious accommodation request was denied." Doubling down during oral argument, counsel stated that "3M denied" Clobes's "objection" to the vaccine mandate. When asked to clarify whether the complaint alleged that the request was denied, counsel stated, "I believe we do allege that it was denied." Counsel did not know "off the top of [his] head" which paragraph of the complaint made that allegation, but he "remember[ed]" it "being alleged." We note that Clobes's complaint contains no such allegation.

[3]Clobes's complaint also alleges that "[t]raining video images of people getting injected with the vaccine made [him] physically ill." But the complaint does not say when 3M required Clobes to watch these videos or how many times Clobes watched them.

[4]See Georgia v. Biden, 574 F. Supp. 3d 1337 (S.D. Ga. 2021), aff'd in part, vacated in part sub nom. Georgia v. President of the U.S., 46 F.4th 1283 (11th Cir. 2022).

3M moved to dismiss Clobes's complaint under Federal Rule of Civil Procedure 12(b)(6). The district court held a hearing on the motion and asked Clobes to clarify certain allegations made in his complaint. Clobes explained that he was never terminated by 3M and that once the vaccine requirement was lifted "he understood there was no longer a threat of termination." Clobes also acknowledged that 3M's policy was "company-wide," as were the emails he received. When the district court expressed that it could not find allegations in the complaint linking 3M's motivation to Clobes's religious beliefs, Clobes stated that he "would seek leave to amend the complaint to perhaps include some ongoing conversations with . . . supervisors and all of that to maybe show a little bit more how he interacted directly with . . . management at 3M."

Ruling from the bench, the district court granted 3M's motion to dismiss. With respect to Clobes's religious discrimination claims, the district court held that Clobes failed to allege facts demonstrating that he suffered an adverse employment action or that similarly situated non-Christians were treated differently by 3M. As to the hostile work environment claims, the district court held that Clobes failed to allege any conduct on 3M's part that rose to the level of severe or pervasive harassment, and that the complaint alleged nothing to suggest a causal connection between Clobes's religion and 3M's conduct. The district court also denied Clobes leave to amend his complaint. It reasoned that amendment of the complaint would be futile because Clobes failed to identify any additional facts that would establish a viable claim. And it noted that Clobes violated the District of Minnesota's Local Rule 15.1(b) by failing to submit a proposed amended complaint.

II.

Clobes challenges the district court's dismissal of his hostile work environment claims.[5] "We review de novo a grant of a motion to dismiss for failure

---

[5]Clobes also states that he challenges the district court's "holding that he could not establish a *prima facie* case for religious harassment." Construing this as a reference to his claims of religious *discrimination*, we consider the issue abandoned.

to state a claim under Rule 12(b)(6), accepting as true all factual allegations in the light most favorable to the nonmoving party." Ahern Rentals, Inc. v. EquipmentShare.com, Inc., 59 F.4th 948, 953 (8th Cir. 2023) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

> To establish a prima facie case for hostile work environment [under Title VII], a plaintiff must show: (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome harassment; (3) a [causal] nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) [his] employer knew or should have known of the harassment and failed to take proper action.

Warmington v. Bd. of Regents of Univ. of Minn., 998 F.3d 789, 799 (8th Cir. 2021). "Given that this 'prima facie model is an evidentiary, not a pleading standard,' the complaint's allegations must only 'give plausible support' to these elements." Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1055 (8th Cir. 2024) (citations omitted). This Title VII framework also applies to Clobes's MHRA hostile work environment claim. See Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 327 F.3d 771, 785 n.11 (8th Cir. 2003).

## A.

The district court did not err in concluding that Clobes's complaint failed to plausibly support the third element of a hostile work environment claim—that a

---

Clobes's brief does not argue any of the district court's holdings with respect to his religious discrimination claims; rather, Clobes argues the hostile work environment holdings. See United States v. Aldridge, 561 F.3d 759, 765 (8th Cir. 2009) (finding that defendants abandoned an issue on appeal because their brief did not support it "with any argument").

causal nexus exists between 3M's allegedly harassing conduct and Clobes's status as a Christian. See Warmington, 998 F.3d at 799. Simply put, nothing in Clobes's complaint attempts to connect 3M's motivation in enacting its vaccination policy to Clobes's Christianity. Indeed, Clobes's complaint alleges that he was required to wear a mask "[b]ecause he wasn't vaccinated." Likewise, he concedes that 3M was simply implementing a "company-wide policy" that ended when the Federal Contractor Mandate was enjoined. Far from suggesting conduct motivated by discriminatory animus, these allegations strongly suggest that 3M implemented a neutral policy unconnected to Clobes's Christianity. In other words, no facts alleged in Clobes's complaint suggest that his Christianity was a "but for" cause of 3M's conduct. Dowd v. United Steelworkers of Am., Local No. 286, 253 F.3d 1093, 1101 (8th Cir. 2001) (finding it relevant that white employees were not subjected to the same kind of harassment as black employees when analyzing the causal nexus element of a hostile work environment claim).

Clobes resists this conclusion by insisting that he put 3M on notice of his beliefs and that there is a clear "link" between his Christianity "and the anxiety he sustained due to" 3M's conduct. But Clobes's complaint needed to plausibly support a causal nexus between 3M's conduct and discriminatory animus. See Norgren, 96 F.4th at 1055. Instead, Clobes stresses the connection between *his* reservations about the vaccine and *his* religious beliefs—a connection that says nothing of 3M's motivations. See Stone v. McGraw Hill Fin., Inc., 856 F.3d 1168, 1175 (8th Cir. 2017) (holding that the plaintiff failed to prove the causal nexus element of his hostile work environment claim because he "offered no evidence of racial motivation when" the harassing incidents took place).

Clobes also argues that "[t]he temporal connection between" his request, 3M's response, "and the continued pressure to receive a COVID-19 vaccine . . . gives rise to an inference of discrimination." We disagree. According to Clobes's complaint, 3M implemented its vaccination policy in September 2021. Clobes submitted his request on November 18, 2021. 3M terminated its policy less than a month later once the Federal Contractor Mandate was enjoined. Absent any allegations that

speak to the "continued pressure" Clobes faced, it is not plausible to infer a causal nexus based on timing alone. See Iqbal, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 557) (alteration in original)). In sum, Clobes's complaint does not allege facts giving plausible support to the causal nexus element of a hostile work environment claim. See Norgren, 96 F.4th at 1055.

B.

The district court also properly concluded that Clobes's complaint failed to plausibly support the fourth element of a hostile work environment claim—that "the harassment affected a term, condition, or privilege of employment." Warmington, 998 F.3d at 799. This element "involves 'both objective and subjective components.' At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" Id. (citations omitted). Under this objective component, "[t]he alleged harassment 'must be so intimidating, offensive, or hostile that it poisoned the work environment.'" Id. (citation omitted).

Clobes's claim fails on this objective component because the conduct he complains of was not sufficiently "intimidating, offensive, or hostile." Id. (citation omitted). Clobes alleges that he was subjected to a few months of company-wide emails and loudspeaker announcements regarding the vaccination requirement, that he had to wear a mask (a precaution that he suggested in his own accommodation request), and that he was warned he could be fired for noncompliance with the policy (a policy that was discontinued less than a month after his request was filed). This conduct is not objectively intimidating, offensive, or hostile, and Clobes points us to no authority on appeal suggesting otherwise. See id. ("The 'standards for a hostile [work] environment [claim] are demanding . . . .'" (citation omitted)).

Clobes's argument to the contrary is unpersuasive. On appeal, he repeatedly emphasizes his subjective feelings about the policy. For example, Clobes argues that "when employers engage in coercive and pressuring activity such as Appellee did that causes distress and harms the psychological well-being of an employee, such conduct is sufficient to satisfy the fourth element of a" hostile work environment claim. Elsewhere, he argues that he "was subjected to a work environment that he perceived as decidedly hostile and anxiety-inducing." But in doing so, Clobes fails to meaningfully develop an argument as to why 3M's conduct was *objectively* intimidating, offensive, or hostile. See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)). The district court thus did not err in dismissing Clobes's complaint for failure to state a claim.

III.

Clobes also challenges the district court's denial of leave to amend his complaint. The district court denied leave to amend on the basis of futility and because Clobes failed to comply with the district's local rules. "Ordinarily, the decision of whether to allow a plaintiff leave to amend a complaint is within the district court's discretion, however, when the court denies leave on the basis of futility, . . . appellate review of this legal conclusion is . . . de novo." Cornelia I. Crowell GST Tr. v. Possis Med., Inc., 519 F.3d 778, 781-82 (8th Cir. 2008).

The district court did not abuse its discretion in denying Clobes leave to amend on the basis that he failed to comply with the District of Minnesota's Local Rule 15.1(b), which requires that "[a]ny motion to amend a pleading must be accompanied by . . . a copy of the proposed amended pleading." We have long recognized that "[a] district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009). Here, Clobes sought leave to amend his complaint without submitting a proposed amended complaint to the district court. "Because we agree with the district court on th[is] point[], we need

not reach its alternate holding that" amendment of Clobes's complaint would be futile. <u>Olmsted Citizens for a Better Cmty. v. United States</u>, 793 F.2d 201, 203 n.2 (8th Cir. 1986).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

I am skeptical about the court's conclusion that the complaint failed to link the alleged harassment to Thomas Clobes's religion. *Cf. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024) (holding that similar allegations stated a claim for religious discrimination); *Lucky v. Landmark Med. of Mich., P.C.*, — F.4th —, 2024 WL 2947920, at *2 (6th Cir. June 12, 2024) (same). The good news, however, is that we are unanimous on one point that fully resolves this case: any harassment was neither severe nor pervasive enough to be actionable. *See Farragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (explaining that "conduct must be extreme"); *see also Blomker v. Jewell*, 831 F.3d 1051, 1058–59 (8th Cir. 2016) (collecting various cases with more egregious conduct that did not qualify). I would end the analysis there, so I join all but Part II.A of the court's opinion.

_____